# UNITED STATES *v.* SELLS ENGINEERING, INC.,
## ET AL.

No. 81–1032. Argued March 2, 1983—Decided June 30, 1983

*Douglas Letter* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Geller, Joshua I. Schwartz,* and *Leonard Schaitman.*

*Arlington Ray Robbins* argued the cause for respondents. With him on the brief were *Michael E. Cahill* and *David P. Curnow.**

JUSTICE BRENNAN delivered the opinion of the Court.

The question in this case is under what conditions attorneys for the Civil Division of the Justice Department, their paralegal and secretarial staff, and all other necessary assistants, may obtain access to grand jury materials, compiled with the assistance and knowledge of other Justice Department attorneys, for the purpose of preparing and pursuing a civil suit. We hold that such access is permissible only when the Government moves for court-ordered disclosure under Federal Rule of Criminal Procedure 6(e)(3)(C)(i) and makes the showing of particularized need required by that Rule.

I

Respondents Peter A. Sells and Fred R. Witte were officers of respondent Sells Engineering, Inc. That company

---

*Briefs of *amici curiae* urging affirmance were filed by *Morris Harrell* and *Richard L. Aynes* for the American Bar Association; by *Thomas E. Holliday, Fred Okrand, Charles S. Sims,* and *Burt Neuborne* for the American Civil Liberties Union Foundation et al.; by *Erwin N. Griswold* and *Otis M. Smith* for General Motors Corp.; and by *Thomas J. Donnelly* for Miller Brewing Co.

*Patrick Henry,* pro se, *Mark D. Cohen,* and *James J. O'Rourke* filed a brief for the District Attorney of Suffolk County, New York, as *amicus curiae.*

had contracts with the United States Navy to produce airborne electronic devices designed to interfere with enemy radar systems. In 1974, a Special Agent of the Internal Revenue Service began a combined criminal and civil administrative investigation of respondents. The Agent issued administrative summonses for certain corporate records of Sells Engineering. When the corporation refused to comply, the Agent obtained a District Court order enforcing the summonses. Enforcement was stayed, however, pending appeal.

While the enforcement case was pending in the Court of Appeals, a federal grand jury was convened to investigate charges of criminal fraud on the Navy and of evasion of federal income taxes. The grand jury subpoenaed, and respondents produced, many of the same materials that were the subject of the IRS administrative summonses.[1] The grand jury indicted all three respondents on two counts of conspiracy to defraud the United States[2] and nine counts of tax fraud.[3] Respondents moved to dismiss the indictment, alleging grand jury misuse for civil purposes. Before the motion was decided, however, the parties reached a plea bargain. The individual respondents each pleaded guilty to one count of conspiracy to defraud the Government by obstructing an IRS investigation. All other counts were dismissed, and respondents withdrew their charges of grand jury misuse.

Thereafter, the Government moved for disclosure of all grand jury materials to attorneys in the Justice Department's Civil Division, their paralegal and secretarial assistants, and certain Defense Department experts, for use in preparing

---

[1] The Court of Appeals, upon learning this, remanded the summons enforcement action for reconsideration. The Government did not pursue the matter further, and the suit was dismissed for want of prosecution.

[2] 18 U. S. C. § 371.

[3] 26 U. S. C. § 7206(2).

and conducting a possible civil suit against respondents under the False Claims Act, 31 U. S. C. § 231 *et seq.*[4] Respondents opposed the disclosure, renewing their allegations of grand jury misuse. The District Court granted the requested disclosure, concluding that attorneys in the Civil Division are entitled to disclosure as a matter of right under Rule 6(e)(3)(A)(i). The court also stated that disclosure to Civil Division attorneys and their nonattorney assistants was warranted because the Government had shown particularized need for disclosure.[5] The Court of Appeals vacated and remanded, holding that Civil Division attorneys could obtain disclosure only by showing particularized need under Rule 6(e)(3)(C)(i), and that the District Court had not applied a correct standard of particularized need. *In re Grand Jury Investigation No. 78–184 (Sells, Inc.)*, 642 F. 2d 1184 (CA9 1981).[6] We granted certiorari, 456 U. S. 960 (1982). We now affirm.

---

[4] Although the Government has always contended that the Civil Division attorneys are entitled to disclosure without any court order, the Government chose to request permission for disclosure from the District Court. It stated that it thought no order necessary, but requested an order in the alternative. Record 519–522; see Tr. of Oral Arg. 5–9.

[5] The District Court found it unnecessary to pass on the allegations of grand jury misuse, but it stated without elaboration that had it considered the issue it would have found no such misuse. App. to Pet. for Cert. 24a.

[6] The District Court refused to stay disclosure. A single Circuit Judge did issue an interim stay, but a two-judge panel vacated it and refused a further stay. Hence, the Civil Division attorneys and their assistants enjoyed access to the grand jury materials for more than two years while this case was pending in the Court of Appeals. During this time the Government filed its False Claims Act suit against respondents. The Civil Division has been denied access since the Court of Appeals issued its mandate.

The Government argued in the Court of Appeals that the case was moot because the disclosure sought to be prevented had already occurred. The Court of Appeals correctly rejected the contention:

"The controversy here is still a live one. By its terms the disclosure order grants access to all attorneys for the Civil Division, their paralegal and secretarial staff, and all other necessary assistants. Each day this order remains effective the veil of secrecy is lifted higher by disclosure to additional

## II

## A

The grand jury has always occupied a high place as an instrument of justice in our system of criminal law—so much so that it is enshrined in the Constitution. *Pittsburgh Plate Glass Co.* v. *United States*, 360 U. S. 395, 399 (1959); *Costello* v. *United States*, 350 U. S. 359, 361–362 (1956). It serves the "dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg* v. *Hayes*, 408 U. S. 665, 686–687 (1972) (footnote omitted). It has always been extended extraordinary powers of investigation and great responsibility for directing its own efforts:

> "Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. 'It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.'" *United States* v. *Calandra*, 414 U. S. 338, 343 (1974), quoting *Blair* v. *United States*, 250 U. S. 273, 282 (1919).

---

personnel and by the continued access of those to whom the materials have already been disclosed. We cannot restore the secrecy that has already been lost but we can grant partial relief by preventing further disclosure." *In re Grand Jury Investigation No. 78–184 (Sells, Inc.)*, 642 F. 2d, at 1187–1188.

424

These broad powers are necessary to permit the grand jury to carry out both parts of its dual function. Without thorough and effective investigation, the grand jury would be unable either to ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution. *Branzburg, supra,* at 688; *Calandra, supra,* at 343. See also *United States* v. *Dionisio,* 410 U. S. 1, 12–13 (1973); *United States* v. *Johnson,* 319 U. S. 503, 510–512 (1943); *Hale* v. *Henkel,* 201 U. S. 43, 59–66 (1906).

The same concern for the grand jury's dual function underlies the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States* v. *Procter & Gamble Co.,* 356 U. S. 677, 681 (1958) (footnote omitted).

> "We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U. S. 211, 218–219 (1979) (footnotes and citation omitted).

Grand jury secrecy, then, is "as important for the protection of the innocent as for the pursuit of the guilty." *Johnson,*

*supra*, at 513. Both Congress and this Court have consistently stood ready to defend it against unwarranted intrusion. In the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized. See *Illinois* v. *Abbott & Associates, Inc.*, 460 U. S. 557, 572–573 (1983).

B

Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy. Paragraph 6(e)(2) provides that grand jurors, Government attorneys and their assistants, and other personnel attached to the grand jury are forbidden to disclose matters occurring before the grand jury. Witnesses are not under the prohibition unless they also happen to fit into one of the enumerated classes. Paragraph 6(e)(3) sets forth four exceptions to this nondisclosure rule.[7]

---

[7] Rules 6(e)(2) and (3), as presently in force, provide as follows:

"(e) Recording and Disclosure of Proceedings

. . . . .

"(2) General Rule of Secrecy.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

"(3) Exceptions.

"(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

"(i) an attorney for the government for use in the performance of such attorney's duty; and

"(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

"(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any

Subparagraph 6(e)(3)(A) contains two authorizations for disclosure as a matter of course, without any court order. First, under subparagraph 6(e)(3)(A)(i), disclosure may be made without a court order to "an attorney for the government for use in the performance of such attorney's duty" (referred to hereinafter as "(A)(i) disclosure"). "Attorney for the government" is defined in Rule 54(c) in such broad terms as potentially to include virtually every attorney in the Department of Justice.[8] Second, under subparagraph 6(e)(3)(A)(ii), grand jury materials may likewise be provided to "government personnel . . . [who] assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law" ("(A)(ii) disclosure"). Subparagraph 6(e)(3)(B) further regulates (A)(ii) disclosure,

---

purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

"(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

"(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

"(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

"If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct."

A fifth exception has been created this Term in an amendment to Rule 6(e), to take effect August 1, 1983. 461 U. S. 1121 (1983). The amendment adds a new subparagraph 6(e)(3)(C)(iii), permitting disclosure "when the disclosure is made by an attorney for the government to another federal grand jury." The Advisory Committee's Note points out that secrecy is not thereby compromised, since the second grand jury is equally under Rule 6's requirement of secrecy.

[8] "'Attorney for the government' means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, [and] an authorized assistant of a United States Attorney . . . ." See also n. 12, *infra*.

forbidding use of grand jury materials by "government personnel" for any purpose other than assisting an attorney for the Government in his enforcement of criminal law, and requiring that the names of such personnel be provided to the district court.

Subparagraph 6(e)(3)(C) also authorizes courts to order disclosure. Under subparagraph 6(e)(3)(C)(i), a court may order disclosure "preliminarily to or in connection with a judicial proceeding" (a "(C)(i) order").[9] Under subparagraph 6(e)(3)(C)(ii), a court may order disclosure under certain conditions at the request of a defendant. See also n. 7, *supra*.

The main issue in this case is whether attorneys in the Justice Department may obtain automatic (A)(i) disclosure of grand jury materials for use in a civil suit, or whether they must seek a (C)(i) court order for access. If a (C)(i) order is necessary, we must address the dependent question of what standards should govern issuance of the order.

## III

The Government contends that all attorneys in the Justice Department qualify for automatic disclosure of grand jury materials under (A)(i), regardless of the nature of the litigation in which they intend to use the materials. We hold that (A)(i) disclosure is limited to use by those attorneys who conduct the criminal matters to which the materials pertain. This conclusion is mandated by the general purposes and policies of grand jury secrecy, by the limited policy reasons why Government attorneys are granted access to grand jury materials for criminal use, and by the legislative history of Rule 6(e).

## A

The Government correctly contends that attorneys for the Civil Division of the Justice Department are within the class of "attorneys for the government" to whom (A)(i) allows dis-

---

[9] See generally *United States* v. *Baggot, post*, p. 476.

closure without a court order. Rule 54(c) defines the phrase expansively, to include "authorized assistant[s] of the Attorney General"; 28 U. S. C. § 515(a) provides that the Attorney General may direct any attorney employed by the Department to conduct "any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . ." See also § 518(b). In short, as far as Rules 6 and 54 are concerned, it is immaterial that certain attorneys happen to be assigned to a unit called the Civil Division, or that their usual duties involve only civil cases. If, for example, the Attorney General (for whatever reason) were to detail a Civil Division attorney to conduct a criminal grand jury investigation, nothing in Rule 6 would prevent that attorney from doing so; he need not secure a transfer out of the Civil Division.[10]

It does not follow, however, that any Justice Department attorney is free to rummage through the records of any grand jury in the country, simply by right of office. Disclosure under (A)(i) is permitted only "in the performance of such attorney's duty." The heart of the primary issue in this case is whether performance of duty, within the meaning of (A)(i), includes preparation and litigation of a civil suit by a Justice Department attorney who had no part in conducting the related criminal prosecution.

Given the strong historic policy of preserving grand jury secrecy, one might wonder why Government attorneys are given any automatic access at all. The draftsmen of the original Rule 6 provided the answer:

> "Government attorneys are entitled to disclosure of grand jury proceedings, other than the deliberations and the votes of the jurors, inasmuch as they may be present in the grand jury room during the presentation of evidence. The rule continues this practice." Advisory

---

[10] See generally 8 J. Moore, Moore's Federal Practice ¶ 6.04[7] (2d ed. 1983); 1 C. Wright, Federal Practice and Procedure § 105 (2d ed. 1982). But see n. 12, *infra*.

Committee's Notes on Federal Rule of Criminal Procedure 6(e), 18 U. S. C. App., p. 1411.

This is potent evidence that Rule 6(e) was never intended to grant free access to grand jury materials to attorneys not working on the criminal matters to which the materials pertain. The Advisory Committee's explanation strongly suggests that automatic access to grand jury materials is available only to those attorneys for the Government who would be entitled to appear before the grand jury.[11] But Government attorneys are allowed into grand jury rooms, not for the general and multifarious purposes of the Department of Justice, but because both the grand jury's functions and their own *prosecutorial* duties require it.[12] As the Advisory Com-

---

[11] We do not mean to suggest that (A)(i) access to grand jury materials is limited to those prosecutors who actually *did* appear before the grand jury. If that were so, the Government would be arbitrarily foreclosed from increasing or changing the staffing of a given criminal case after indictment, or even from replacing an attorney who leaves Government service. Moreover, there would be little point to such an interpretation, since anyone working on a given prosecution would clearly be *eligible* under Rule 6(d) to enter the grand jury room, even if particular individuals did not have occasion to do so. Rather, as the history discussed by the dissent, *post*, at 452–455, shows, the intent of the Rule is that every attorney (including a supervisor) who is working on a prosecution may have access to grand jury materials, at least while he is conducting criminal matters. Cf. n. 15, *infra*. See Hearings on Proposed Amendments to the Federal Rules of Criminal Procedure before the Subcommittee on Criminal Justice of the House Committee on the Judiciary, 95th Cong., 1st Sess., 46–47 (1977) (hereinafter House Hearings); *id.*, at 67 (testimony of Department of Justice representative that every member of the prosecution "team" is entitled to automatic access); *infra*, at 439–440. Nothing in these sources or those cited by the dissent, however, suggests that the draftsmen of Rule 6(d) or (e) intended that Justice Department attorneys *not* working on a prosecution should have automatic access. On the contrary, the passages quoted *post*, at 452–455, show fairly clearly that the reason why it was thought desirable to allow disclosure to other prosecutors was to facilitate effective working of the *prosecution* team.

[12] Indeed, the Courts of Appeals have held or assumed that even an attorney from the Justice Department's *Criminal* Division may appear before a

mittee suggested, the same reasoning applies to disclosure of grand jury materials outside the grand jury room.

The purpose of the grand jury requires that it remain free, within constitutional and statutory limits, to operate "independently of either prosecuting attorney or judge." *Stirone* v. *United States,* 361 U. S. 212, 218 (1960) (footnote omitted). Nevertheless, a modern grand jury would be much less effective without the assistance of the prosecutor's office and the investigative resources it commands. The prosecutor ordinarily brings matters to the attention of the grand jury and gathers the evidence required for the jury's consideration. Although the grand jury may itself decide to investigate a matter or to seek certain evidence, it depends largely on the prosecutor's office to secure the evidence or witnesses it requires.[13] The prosecutor also advises the lay jury on the applicable law. The prosecutor in turn needs to know what transpires before the grand jury in order to perform his own duty properly. If he considers that the law and the admissible evidence will not support a conviction, he can be expected to advise the grand jury not to indict. He must also examine indictments, and the basis for their issuance, to determine whether it is in the interests of justice to proceed with prosecution.[14]

---

grand jury only if he has been authorized to conduct grand jury proceedings under 28 U. S. C. § 515(a), § 543(a), or a similar statute, because only with such credentials would the attorney be an "*authorized* assistant of the Attorney General" as required by Rule 54(c). *E. g., United States* v. *Prueitt,* 540 F. 2d 995, 999–1003 (CA9 1976); *In re Persico,* 522 F. 2d 41, 46 (CA2 1975); *United States* v. *Wrigley,* 520 F. 2d 362 (CA8 1975).

[13] Not only would the prosecutor ordinarily draw up and supervise the execution of subpoenas, but also he commands the investigative forces that might be needed to find out what the grand jury wants to know. See also, *e. g.,* 18 U. S. C. § 6003 (United States Attorney to request order granting use immunity).

[14] See generally *United States* v. *Calandra,* 414 U. S. 338, 351 (1974); *Hale* v. *Henkel,* 201 U. S. 43, 60, 65 (1906); Fed. Rule Crim. Proc. 7(c)(1) (prosecutor to sign indictment); National District Attorneys Association, National Prosecution Standards 14.2–E, 14.4, and accompanying commen-

None of these considerations, however, provides any support for breaching grand jury secrecy in favor of Government attorneys *other than prosecutors*—either by allowing them into the grand jury room, or by granting them uncontrolled access to grand jury materials. An attorney with only civil duties lacks both the prosecutor's special role in supporting the grand jury, and the prosecutor's own crucial need to know what occurs before the grand jury.[15]

Of course, it would be of substantial help to a Justice Department civil attorney if he had free access to a storehouse of evidence compiled by a grand jury; but that is of a different order from the prosecutor's need for access. The civil lawyer's need is ordinarily nothing more than a matter of saving time and expense. The same argument could be made for access on behalf of any lawyer in another Government agency, or indeed, in private practice. We have consistently rejected the argument that such savings can justify a breach of grand jury secrecy. *E. g., Procter & Gamble*, 356 U. S., at 682–683; *Smith* v. *United States*, 423 U. S. 1303, 1304 (1975) (Douglas, J., in chambers); see also *Abbott*, 460 U. S., at 565–573. In most cases, the same evidence that could be obtained from the grand jury will be available through ordinary discovery or other routine avenues of investigation. If, in a particular case, ordinary discovery is insufficient for some reason, the Government may request disclosure under a (C)(i) court order. See Part IV, *infra*.

Not only is disclosure for civil use unjustified by the considerations supporting prosecutorial access, but also it threatens to do affirmative mischief. The problem is threefold.

---

tary (1977); ABA Standards for Criminal Justice 3–3.5, 3–3.6 (2d ed. 1980); ABA Section of Criminal Justice, ABA Grand Jury Policy and Model Act 4–9, 12 (2d ed. 1982).

[15] This case involves only access by Civil Division attorneys who played no part in the criminal prosecution of respondents. It does not present any issue concerning continued use of grand jury materials, in the civil phase of a dispute, by an attorney who himself conducted the criminal prosecution. We decline to address that problem in this case.

First, disclosure to Government bodies raises much the same concerns that underlie the rule of secrecy in other contexts. Not only does disclosure increase the number of persons to whom the information is available (thereby increasing the risk of inadvertent or illegal release to others),[16] but also it renders considerably more concrete the threat to the willingness of witnesses to come forward and to testify fully and candidly. If a witness knows or fears that his testimony before the grand jury will be routinely available for use in governmental civil litigation or administrative action, he may well be less willing to speak for fear that he will get himself into trouble in some other forum. Cf. *Pillsbury Co.* v. *Conboy,* 459 U. S. 248, 263, n. 23 (1983).

Second, because the Government takes an active part in the activities of the grand jury, disclosure to Government attorneys for civil use poses a significant threat to the integrity of the grand jury itself. If prosecutors in a given case knew that their colleagues would be free to use the materials generated by the grand jury for a civil case, they might be tempted to manipulate the grand jury's powerful investigative tools to root out additional evidence useful in the civil suit, or even to start or continue a grand jury inquiry where no criminal prosecution seemed likely. Any such use of grand jury proceedings to elicit evidence for use in a civil case is improper *per se.* *Procter & Gamble, supra,* at 683–684. We do not mean to impugn the professional characters of Justice Department lawyers in general; nor do we express any view on the allegations of misuse that have been made in this case, see n. 36, *infra.* Our concern is based less on any belief that grand jury misuse is in fact widespread than on our concern that, if and when it does occur, it would often be very difficult to detect and prove. Moreover, as the legislative history discussed *infra,* Part III–B, shows, our concern over possible misappropriation of the grand jury itself was

---

[16] But see *infra,* at 445.

shared by Congress when it enacted the present version of Rule 6(e). Such a potential for misuse should not be allowed absent a clear mandate in the law.

Third, use of grand jury materials by Government agencies in civil or administrative settings threatens to subvert the limitations applied outside the grand jury context on the Government's powers of discovery and investigation. While there are some limits on the investigative powers of the grand jury,[17] there are few if any other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence. Other agencies, both within and without the Justice Department, operate under specific and detailed statutes, rules, or regulations conferring only limited authority to require citizens to testify or produce evidence. Some agencies have been granted special statutory powers to obtain information and require testimony in pursuance of their duties. Others (including the Civil Division[18]) are relegated to the usual course of discovery under the Federal Rules of Civil Procedure. In either case, the limitations imposed on investigation and discovery exist for sound reasons—ranging from fundamental fairness to concern about burdensomeness and intrusiveness. If Government litigators or investigators in civil matters enjoyed unlimited access to grand jury material, though, there would be little reason for them to resort to their usual, more limited avenues of investigation. To allow

---

[17] See, e. g., *Calandra*, 414 U. S., at 346, and n. 4; *United States* v. *Dionisio*, 410 U. S. 1, 11–12 (1973); *Branzburg* v. *Hayes*, 408 U. S. 665, 688, 707–708 (1972); *id.*, at 709–710 (POWELL, J., concurring); *Curcio* v. *United States*, 354 U. S. 118 (1957); *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385 (1920); *Hale*, 201 U. S., at 75–77.

[18] Title 31 U. S. C. § 232(F) (1976 ed., Supp. V) provides that in suits under the False Claims Act (such as the one brought by the Government here), subpoenas for trial testimony may be served anywhere in the United States, rather than in the limited area provided for in Federal Rule of Civil Procedure 45(e). Section 232(F), however, does not affect Rule 45(d), regulating subpoenas for depositions.

these agencies to circumvent their usual methods of discovery would not only subvert the limitations and procedural requirements built into those methods, but also would grant to the Government a virtual *ex parte* form of discovery, from which its civil litigation opponents are excluded unless they make a strong showing of particularized need. In civil litigation as in criminal, "it is rarely justifiable for the [Government] to have exclusive access to a storehouse of relevant fact." *Dennis* v. *United States*, 384 U. S. 855, 873 (1966) (footnote omitted). We are reluctant to conclude that the draftsmen of Rule 6 intended so remarkable a result.[19]

In short, if grand juries are to be granted extraordinary powers of investigation because of the difficulty and importance of their task, the use of those powers ought to be limited as far as reasonably possible to the accomplishment of

---

[19] The Government contends that the issue of Government access for civil use was settled in *United States* v. *Procter & Gamble Co.*, 356 U. S. 677 (1958). We disagree. In that case, the Government was using grand jury materials to press a civil antitrust suit. The defendants sought to discover the materials under Federal Rule of Civil Procedure 34; we held that such discovery was impermissible without a showing of particularized need. We rejected the defendants' argument that they should obtain discovery because the Government had improperly used the grand jury as a civil discovery device, noting that there was "no finding that the grand jury proceeding was used as a short cut to goals otherwise barred or more difficult to reach." *Id.*, at 683. The passages from that decision so heavily relied on by the dissent, *post*, at 457–458, are simply the Court's recognition that civil use of properly created grand jury materials is not *per se* illegal. The Court did not address, however, the *conditions* under which such civil use by the Government could be permitted, since the issue in the case was only whether private parties could obtain access. In particular, no issue was presented in the case as to whether, having used the grand jury for strictly criminal purposes, the Government should have been permitted to use the grand jury's records for civil ends (whether through the same attorneys or different ones, cf. n. 15, *supra*) *without a court order*. The Court's opinion did not discuss that aspect of the case at all. Justice Whittaker, concurring, did address it, suggesting that a court order should be required in at least some cases. 356 U. S., at 684–685. Since Justice Whittaker joined the majority opinion, however, he at least did not interpret that opinion as the Government now reads it.

the task.[20] The policies of Rule 6 require that any disclosure to attorneys other than prosecutors be judicially supervised rather than automatic.

### B

The Government argues that its reading of Rule 6 is compelled by a textual comparison of subparagraph 6(e)(3)(A)(i) with subparagraph 6(e)(3)(A)(ii). It points out that the former restricts a Government attorney's use of grand jury materials to "the performance of such attorney's duty," while the latter refers more specifically to "performance of such attorney's duty *to enforce federal criminal law*" (emphasis added). The inclusion in (A)(ii) of an express limitation to criminal matters, and the absence of that limitation in the otherwise similar language of (A)(i), the Government argues, show that Congress intended to place the limitation to criminal matters on (A)(ii) disclosure but not on (A)(i) disclosure. The argument is admittedly a plausible one. If we had nothing more to go on than the bare text of the Rule, and if the subject matter at hand were something less sensitive than grand jury secrecy, we might well adopt that reasoning. The argument is not so compelling, nor the language so plain, however, as to overcome the strong arguments to the contrary drawn both from policy, *supra*, Part III–A, and from legislative history.

It is material in this connection that the two subparagraphs are not of contemporaneous origin. The present (A)(i) language has been in the Rule since its inception in 1946; the (A)(ii) provision was added by Congress in 1977. The Government's argument, at base, is that when Congress added the (A)(ii) provision containing an express limitation to criminal use, but did not add a similar limitation to (A)(i), it must have intended that no criminal-use limitation be applied to (A)(i) disclosure. The legislative history, although of less than perfect clarity, leads to the contrary conclusion. It ap-

---

[20] See also *United States* v. *Mara*, 410 U. S. 19, 45–46 (1973) (MARSHALL, J., dissenting).

pears instead that when Congress included the criminal-use limitation in the new (A)(ii), it was merely making explicit what it believed to be already implicit in the existing (A)(i) language.

Rule 6(e), as it stood from 1946 to 1977, contained no provision for access to grand jury materials by nonattorneys[21] assisting Government attorneys. The only provision for automatic access was one substantially the same as the language presently in (A)(i): "Disclosure . . . may be made to . . . the attorney[s] for the government for use in the performance of [their] dut[ies]." This became something of a problem in practice, because Justice Department attorneys found that they often needed active assistance from outside personnel— not only investigators from the Federal Bureau of Investigation, IRS, and other law enforcement agencies, but also accountants, handwriting experts, and other persons with special skills. Hence, despite the seemingly clear prohibition of the Rule, it became common in some Districts for nonattorneys to be shown grand jury materials. This practice sparked some controversy and litigation.[22]

Accordingly, when in 1976 this Court transmitted to the Congress several proposed amendments to the Federal Rules of Criminal Procedure, 425 U. S. 1159, a proposal was included to add one sentence to Rule 6(e), immediately

---

[21] Although, for convenience, we use the term "nonattorneys" to describe the "other government personnel" referred to in (A)(ii), the provisions of (A)(ii) apply as well to attorneys for Government agencies outside the Justice Department, unless they are specially retained under 28 U. S. C. § 515 or § 543.

[22] See, e. g., J. R. Simplot Co. v. United States District Court, 77–1 USTC ¶ 9416 (CA9 1976), withdrawn as moot, 77–2 USTC ¶ 9511 (1977), reprinted in House Hearings 249; Robert Hawthorne, Inc. v. Director of Internal Revenue Service, 406 F. Supp. 1098 (ED Pa. 1975); In re Grand Jury Investigation of William H. Pflaumer & Sons, Inc., 53 F. R. D. 464 (ED Pa. 1971).

following the provision for disclosure to attorneys for the Government:

> "For purposes of [Rule 6(e)], 'attorneys for the government' includes those enumerated in Rule 54(c); it also includes such other government personnel as are necessary to assist the attorneys for the government in the performance of their duties." 425 U. S., at 1161.

The accompanying Notes of the Advisory Committee on Rules, 18 U. S. C. App., p. 1024 (1976 ed., Supp. V), explained that the amendment was "designed to facilitate an increasing need, on the part of government attorneys, to make use of outside expertise in complex litigation." *Ibid.* The Committee noted, however, that under its proposal, disclosure to nonattorneys would be "subject to the qualification that the matters disclosed be used *only for the purposes of the grand jury investigation.*" *Id.*, at 1025 (emphasis added). Yet there was no express language in the proposed Rule clearly imposing this criminal-use limitation; the only limitation on use of grand jury materials was the double reference to "the performance of [Government attorneys'] duties." It appears, then, that the Advisory Committee took that phrase to mean that use of grand jury materials was limited to criminal matters, absent a court order allowing civil use—a construction that would apply equally to Justice Department attorneys and their nonattorney assistants.

The proposed amendment to Rule 6(e) met a mixed reception in Congress. Congress first acted to postpone the effective date of the amendment to Rule 6(e) so that it might study the proposal.[23] The House, after hearings, voted to disapprove the amendment. Members of the responsible Subcommittee stated that they were in general sympathy with the purpose of the proposal, but that they were concerned that it was not sufficiently clear to protect adequately

---

[23] 90 Stat. 822.

against use of grand jury materials for improper purposes by Government personnel. They were unable to agree on a substitute draft.[24]

The Senate Judiciary Committee was more hospitable to the original proposal. After consultation with House Members,[25] however, the Committee undertook to redraft Rule 6(e) to accommodate both the purpose of the proposed amendment and the concerns of the House.[26] The result was Rule 6(e) in substantially its present form, passed by both Houses without significant opposition.[27]

Congressional criticism of the proposed amendment focused on two problems: disclosure of grand jury materials to agencies outside the Department of Justice, and use of grand jury materials for non-grand-jury purposes. The two were closely related, however; the primary objection to granting access to employees of outside agencies, such as the IRS, was a concern that they would use the information to pursue civil investigations or unrelated criminal matters, in derogation of the limitations on their usual avenues of investigation.[28] Little attention was paid to the prospect that other attorneys within the Justice Department, as much as other agencies,

[24] H. R. Rep. No. 95–195, pp. 4–5 (1977); *id.*, at 13–15 (additional views of Rep. Wiggins); 123 Cong. Rec. 11109 (1977) (remarks of Rep. Mann); *id.*, at 11110 (remarks of Rep. Wiggins); *id.*, at 11111 (remarks of Rep. Holtzman); *id.*, at 25195–25196 (remarks of Rep. Wiggins).

[25] See *id.*, at 25194 (remarks of Rep. Mann).

[26] S. Rep. No. 95–354, pp. 1–2, 5–8 (1977).

[27] Rule 6(e) was further amended in other respects in 1979 and again this Term (the latter amendment to take effect on August 1, 1983). Neither of these amendments has any bearing on this case, except as discussed in n. 7, *supra.* The present Rule 6(e)(3) was designated as Rule 6(e)(2) in the version proposed by the Senate and enacted in 1977.

[28] The House Report recommending disapproval, for example, stated:

"It was feared that the proposed change would allow Government agency personnel to obtain grand jury information which they could later use in connection with an unrelated civil or criminal case. This would enable those agencies to circumvent statutes that specifically circumscribe the investigative procedure otherwise available to them." H. R. Rep. No. 95–195, p. 4 (1977) (footnote omitted).

might use grand jury materials for civil purposes—presumably because the proposed amendment did not purport to alter the text governing access by Justice Department attorneys in any way. The only participant to address that aspect of the problem directly was Acting Deputy Attorney General Richard Thornburgh, testifying on behalf of the Justice Department at the House Hearings. Thornburgh acknowledged that it would be a bad idea to allow agency personnel to use grand jury materials for civil purposes, but he contended that neither the proposal as drafted nor current practice would allow such use. Materials, he said, should be available to "every legitimate member of [the] team" conducting the criminal investigation, including "the assistant U. S. attorney who is probably conducting the investigation." [29] He continued:

> "Now, when you begin to move beyond the parameters of that particular investigation, we get to the point that you and I both have some trouble with. The cleanest example I can think of where a 6(e) order [*i. e.*, a court order under what is now (C)(i)] is clearly required is where a criminal fraud investigation before a grand jury fails to produce enough legally admissible evidence to prove beyond a reasonable doubt that criminal fraud ensued.
>
> *"It would be the practice of the Department at that time to seek a 6(e) order from the court in order that that evidence could be made available for whatever civil consequences might ensue.*
>
> "If there were fraud against the Government[,] for example, there would be a civil right of the Government to recover penalties with respect to the fraud that took place." [30]

---

[29] House Hearings 67.

[30] *Ibid.* (emphasis added).

The dissent asserts that Thornburgh's testimony refers to use of grand jury materials by lawyers for outside agencies, not by attorneys in the Jus-

The rest of the legislative history is consistent with this view that *no* disclosure of grand jury materials for civil use should be permitted without a court order.[31] Congress' expressions of concern about civil use of grand jury materials did not distinguish in principle between such use by outside agencies and by the Department; rather, the key distinction was between disclosure for criminal use, as to which access should be automatic, and for civil use, as to which a court order should be required.[32] The Senate Report, for example, explained its redraft thus:

tice Department. *Post*, at 461, and n. 8. This assertion is inexplicable, since Thornburgh was speaking of a suit on behalf of the Government for civil fraud—in other words, to the precise situation presented in the present case.

The dissent also refers to various other indications, as it takes them to be, of standard Department practice as it existed at various times considerably before 1977. As the dissent itself notes, however, *post*, at 456–457, "standard practice" was somewhat inconsistent with itself, and in many instances resulted in use of grand jury materials that clearly would now be considered illegal under Rule 6(e). Indeed, in the *Procter & Gamble* case, the Government argued in the District Court that there was nothing improper in its practice of using a grand jury deliberately for the purpose of advancing a civil investigation, *United States* v. *Procter & Gamble Co.*, 19 F. R. D. 122, 124, and n. 7 (NJ 1956)—a proposition we squarely rejected in our decision, 356 U. S., at 683–684. In any event, we think the most reliable evidence of what Congress in 1977 understood to be standard Department practice was what Thornburgh, the Department's official representative at the hearings, stated it to be.

[31] Admittedly, there were one or two suggestions in the course of consideration that there might be some distinction between the Justice Department and all other agencies, based on a district court's greater ability to exercise supervision over a United States Attorney. See, *e. g.*, House Hearings 47–54 (statement of Judge Becker); see also *Robert Hawthorne, Inc.* v. *Director of Internal Revenue Service*, 406 F. Supp. 1098 (ED Pa. 1976) (Becker, J.). This suggested solution did not prevail, however. Indeed, the Senate's compromise redraft was intended to avoid imposing a supervisory role on the district court with regard to criminal use of grand jury materials by prosecutors or their assistants. See S. Rep. No. 95–354, pp. 7, n. 12, 8 (1977).

[32] The American Bar Association's Section of Criminal Justice has since proposed to amend (A)(i) by adding the same express limitation to criminal

"The Rule as redrafted is designed to accommodate the belief on the one hand that Federal prosecutors should be able, without the time-consuming requirement of prior judicial interposition, to make such disclosures of grand jury information to other government personnel as they deem necessary to facilitate the performance of their duties relating to criminal law enforcement. On the other hand, the Rule seeks to allay the concerns of those who fear that such prosecutorial power will lead to misuse of the grand jury to enforce non-criminal Federal laws by (1) providing a clear prohibition, subject to the penalty of contempt and (2) requiring that a court order under paragraph (C) be obtained to authorize such a disclosure. There is, however, no intent to preclude the use of grand jury-developed evidence for civil law enforcement purposes. On the contrary, there is no reason why such use is improper, assuming that the grand jury was utilized for the legitimate purpose of a criminal investigation. Accordingly, the Committee believes and intends that the basis for a court's refusal to issue an order under paragraph (C) to enable the government to disclose grand jury information in a non-criminal proceeding should be no more restrictive than is the case today under prevailing court decisions." S. Rep. No. 95–354, p. 8 (1977) (footnote omitted).

This paragraph reflects the distinction the Senate Committee had in mind: "Federal prosecutors" are given a free hand con-

---

matters that now exists in (A)(ii). According to the ABA, the amendment would "make explicit the clear intention of the drafters of the 1977 amendment to the rule . . . [to] ensur[e] that the grand jury is not used, *by anyone*, as an uncontrolled means of enforcing civil laws." ABA Grand Jury Policy and Model Act 5, 15 (2d ed. 1982) (emphasis in original). See also House Hearings 124. The Advisory Committee on Criminal Rules of the Judicial Conference tentatively proposed to adopt the ABA's suggestion, but it deferred consideration of the matter pending our decision in this case. Letter of transmittal from William E. Foley to this Court, October 1, 1982, attachment.

cerning use of grand jury materials, at least pursuant to their "duties relating to criminal law enforcement"; but disclosure of "grand jury-developed evidence for civil law enforcement purposes" requires a (C)(i) court order.[33]

We conclude, then, that Congress did not intend that "attorneys for the government" should be permitted free civil use of grand jury materials. Congress was strongly concerned with assuring that prosecutors would not be free to turn over grand jury materials to others in the Government for civil uses without court supervision, and that statutory limits on civil discovery not be subverted—concerns that apply to civil use by attorneys within the Justice Department as fully as to similar use by persons in other Government agencies. Both the Advisory Committee Notes and the testimony of the Justice Department's own representative suggested that even under the old Rule such disclosure for civil use would not have been permissible; indeed, the latter gave a hypothetical illustration closely similar to this very case. The express addition of a "criminal-use" limitation in (A)(ii) appears to have been prompted by an abundance of caution, owing to Congress' special concern that nonattorneys were the ones most likely to pose a danger of unauthorized use.

## IV

Since we conclude that the Government must obtain a (C)(i) court order to secure the disclosure it seeks in this case,[34] we must consider what standard should govern the issuance of such an order.

Rule 6(e)(3)(C)(i) simply authorizes a court to order disclosure "preliminarily to or in connection with a judicial proceeding." Neither the text of the Rule nor the accom-

---

[33] Cf. n. 15, *supra*.

[34] The Government concedes that in any event it would need a (C)(i) order before it could show these materials to the Defense Department experts whose assistance it desires.

panying commentary describes any substantive standard governing issuance of such orders. We have consistently construed the Rule, however, to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted. *Abbott*, 460 U. S., at 566–567; *Douglas Oil*, 441 U. S., at 217–224; *Dennis*, 384 U. S., at 869–870; *Pittsburgh Plate Glass Co.*, 360 U. S., at 398–401; *Procter & Gamble*, 356 U. S., at 681–683. We described the standard in detail in *Douglas Oil*:

> "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. . . .
>
> "It is clear from *Procter & Gamble* and *Dennis* that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure. It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification. In sum, . . . the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court. And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material . . . ." 441 U. S., at 222–223 (citations omitted).

The Government points out that *Douglas Oil* and its forerunners all involved private parties seeking access to grand jury materials. It contends that the *Douglas Oil* standard ought not be applied when Government officials seek access "in furtherance of their responsibility to protect the public weal." Brief for United States 43. Earlier this Term,

however, we rejected a similar argument in *Abbott, supra.* At issue there was an antitrust statute requiring the United States Attorney General to turn over to state attorneys general certain investigative files and materials, "to the extent permitted by law." 15 U. S. C. § 15f(b). We assumed that grand jury records are among the materials to be disclosed under the statute, 460 U. S., at 566, n. 10. We held nevertheless that the particularized-need standard applies to disclosure to state attorneys general, and that Congress did not intend to legislate to the contrary when it enacted the statute in question. *Id.*, at 566–568, and nn. 14–16.

Our conclusion that *Douglas Oil* governs disclosure to public parties as well as private ones is bolstered by the legislative history of the 1977 amendment of Rule 6(e), *supra*, Part III–B. That amendment was not directed at the provision for court-ordered disclosure (now (C)(i)), which remained textually unchanged. The Senate Committee that drafted the present Rule noted the importance of that provision, however, pointing out that it would continue to govern disclosure to Government parties for civil use under prevailing court interpretations.[35] Moreover, if we were to agree with the Government that disclosure is permissible if the grand jury materials are "relevant to matters within the duties of the attorneys for the government," Brief for United States 13, a (C)(i) court order would be a virtual rubber-stamp for the Government's assertion that it desires disclosure. Thus, under the Government's argument, it would get under subparagraph (C)(i) precisely what Congress in 1977 intended to deny it under subparagraphs (A) and (B)— unlimited and unregulated access to grand jury materials for civil use.

The Government further argues that "disclosure of grand jury materials to government attorneys typically implicates

---

[35] S. Rep. No. 95–354, p. 8, and n. 13 (1977). See also House Hearings 92–93.

few, if any, of the concerns that underlie the policy of grand jury secrecy." Brief for United States 45. The contention is overstated, see *supra*, at 431–434, but it has some validity. Nothing in *Douglas Oil*, however, requires a district court to pretend that there are no differences between governmental bodies and private parties. The *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others. Hence, although *Abbott* and the legislative history foreclose any special dispensation from the *Douglas Oil* standard for Government agencies, the standard itself accommodates any relevant considerations, peculiar to Government movants, that weigh for or against disclosure in a given case. For example, a district court might reasonably consider that disclosure to Justice Department attorneys poses less risk of further leakage or improper use than would disclosure to private parties or the general public. Similarly, we are informed that it is the usual policy of the Justice Department not to seek civil use of grand jury materials until the criminal aspect of the matter is closed. Cf. *Douglas Oil*, *supra*, at 222–223. And "under the particularized-need standard, the district court may weigh the public interest, if any, served by disclosure to a governmental body . . . ." *Abbott*, *supra*, at 567–568, n. 15. On the other hand, for example, in weighing the need for disclosure, the court could take into account any alternative discovery tools available by statute or regulation to the agency seeking disclosure.

In this case, the District Court asserted that it had found particularized need for disclosure, but its explanation of that conclusion amounted to little more than its statement that the grand jury materials sought are rationally related to the civil fraud suit to be brought by the Civil Division. App. to Pet. for Cert. 22a–23a. The Court of Appeals correctly held that this was insufficient under *Douglas Oil* and remanded

for reconsideration under the proper legal standard. 642 F. 2d, at 1190–1192.[36]

## V

The Court of Appeals correctly held that disclosure to Government attorneys and their assistants for use in a civil suit is permissible only with a court order under Rule 6(e)(3)(C)(i), and that the District Court did not apply correctly the particularized-need standard for issuance of such an order. Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

CHIEF JUSTICE BURGER, with whom JUSTICE POWELL, JUSTICE REHNQUIST, and JUSTICE O'CONNOR join, dissenting.

The Court today holds that attorneys within the Department of Justice who are not assigned to the grand jury investigation or prosecution must seek a court order on a showing of particularized need in order to obtain access, for the purpose of preparing a civil suit, to grand jury materials already in the Government's possession. In my view, this holding is contrary not only to the clear language but also to the history of Rule 6(e)(3)(A)(i) of the Federal Rules of Criminal Procedure. In addition, the Court's decision reflects an erroneous assessment of the relevant policies, and provides the courts and the Department of Justice with precious little guidance in an area of great importance. I believe that, when a grand jury is validly convened and conducted on the request of the Government for criminal investigatory purposes, it is proper

---

[36] The Court of Appeals properly directed that the District Court should consider respondents' allegations of grand jury misuse. 642 F. 2d, at 1192. The District Court had already stated as an aside that it was not persuaded that any such misuse had taken place, but it expressly declined to rule on the matter formally or to state the grounds for its view. App. to Pet. for Cert. 24a. We also leave it to the District Court to consider the significance, if any, of the findings on respondents' allegations entered in a related litigation. See Brief for United States 8–9, n. 8.

and entirely consistent with the Federal Rules of Criminal Procedure for any attorney in the Department of Justice to have access to grand jury materials in pursuing inquiry into civil claims involving the same or related matters. I therefore dissent.

## I

Rule 6(e)(3)(A)(i) (hereinafter (A)(i)) is straightforward and clear. It provides:

> "(A) Disclosure . . . of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—
> "(i) an attorney for the government for use in the performance of such attorney's duty."

Notwithstanding the clarity of the Rule, neither the Court of Appeals for the Ninth Circuit nor the majority of this Court has seen fit to honor its plain language.

As nearly as we can understand, the Court of Appeals' opinion holds that attorneys within the Department of Justice assigned to civil matters are not entitled to routine, automatic disclosure of grand jury materials under (A)(i). In reaching this conclusion, the Court of Appeals appears to have drawn a sharp line between attorneys on the third floor of the Department of Justice assigned to civil litigation, and those on the first floor assigned to criminal cases. Such a reading is contrary to the Rule, to the intent of Congress, and to common sense.

Subparagraph (A)(i) authorizes automatic disclosure to any "attorney for the government" for use by that attorney in the performance of his assigned duty. The term "attorney for the government" is in turn defined in Rule 54(c) to include "an authorized assistant of the Attorney General."[1] By

---

[1] Throughout this opinion, the term "Government attorneys" is used to refer to those attorneys specified in Rule 54(c), which provides:

"'Attorney for the government' means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an au-

statute, every Justice Department attorney, wherever assigned in the Department, is an "authorized assistant" of the Attorney General. 28 U. S. C. §§ 510, 515–517. It thus is not surprising to find that the Court's opinion recognizes that "attorneys for the Civil Division of the Justice Department are within the class of 'attorneys for the government' to whom (A)(i) allows disclosure *without* a court order," *ante,* at 427–428 (emphasis added). That should be the end of the matter.

Today we find that it does not end the matter. After properly acknowledging that the term "attorney for the government" embraces Civil Division attorneys, the Court turns to the next clause in the Rule and strains that clause virtually beyond recognition.

Subparagraph (A)(i) authorizes disclosure to a Government attorney "for use in the performance of *such attorney's duty*." At one time all attorneys under the Attorney General were simply his aides. As with private law firms, a time came when it was more efficient to segregate attorneys by their specialized functions into separate Divisions within the Justice Department. An attorney in the Civil Division will naturally deal primarily with civil matters. Once it is recognized that (A)(i) authorizes disclosure to attorneys within the Civil Division, therefore, I would think it beyond question that they, as "assistants to the Attorney General," may use the disclosed materials in performing their normal duties, which of course include the civil fraud action at issue here.

The Court concludes otherwise, however, apparently in the belief that the only duty contemplated by (A)(i) is the conduct of *criminal* cases![2] Nothing in (A)(i) remotely

---

thorized assistant of a United States Attorney, [and, in certain cases, the Attorneys General of Guam and the Northern Mariana Islands]."

The term does not include attorneys for agencies outside the Department of Justice.

[2] As discussed below, see *infra,* at 473–474, the Court's rationale is unclear. At times, the Court seems to be basing its decision upon a distinction between use of grand jury materials in civil and criminal cases. See,

suggests such a curious result. In fact, a comparison of (A)(i) with the subparagraph which directly follows it, (e)(3) (A)(ii) (hereinafter (A)(ii)), reveals precisely the opposite. Subparagraph (A)(ii), which governs disclosure of grand jury materials to personnel assisting Government attorneys, allows disclosure to such nonattorneys only when "deemed necessary . . . to assist an attorney for the government in the performance of such attorney's duty *to enforce federal criminal law*." Nonattorneys therefore are entitled to automatic access only in certain *criminal* cases. In contrast, (A)(i) imposes no such limitation upon disclosure to Government *attorneys*—as distinguished from *non*attorney personnel. Under (A)(i), Government attorneys are entitled to grand jury materials for use in performing the full range of their duties. This reading of the Rule is not simply "plausible," as the Court concedes, see *ante*, at 435; in my view, it is compelling.

In seeking to avoid this straightforward interpretation, the Court places considerable reliance on the fact that Rule 6(e) contained no provision similar to (A)(ii) until 1977, whereas the substance of (A)(i) has appeared in Rule (6)(e) since its inception in 1946. The Court suggests that Congress, in amending the Rule in 1977, sought to grant support personnel the same range of access to grand jury materials as the attorneys they are assisting. In the view of the Court, the language of (A)(ii) simply "mak[es] explicit what [Congress] believed to be already implicit in the existing (A)(i) language." *Ante*, at 436.

---

*e. g.*, *ante*, at 435–443. At other times, however, the Court implies that its rule prohibits only disclosure to those Government lawyers *outside* the "prosecution team," and thus presumably allows any attorney who properly has participated in the criminal investigation or prosecution to use the grand jury materials to which he has had access for any purpose, criminal or civil. See, *e. g.*, *ante*, at 430–431, 431, n. 15, 432, n. 16. Of course, the Attorney General may assign to a criminal case any lawyer under his jurisdiction.

This argument suffers from three major flaws. First, it rests on the assumptions that Government attorneys pursuing civil matters were not entitled to grand jury materials prior to 1977, and that Congress based its 1977 amendments upon such an understanding. Those assumptions are inaccurate, as I will demonstrate.

Second, the Court appears to believe that Government attorneys pursuing civil matters are in essentially the same position as nonattorney support personnel with respect to both their need for grand jury materials and their likelihood to violate grand jury secrecy. This is clearly not the case, and Congress took the obvious differences into account in 1977 when it chose to adopt different standards for disclosure to Government attorneys, on the one hand, and to support personnel, on the other.

Finally, the Court overlooks the reality that in 1977 Congress revised *all* of Rule 6(e)—including what is now (A)(i). Under those circumstances, it hardly seems likely that Congress was ignorant of the fact that the standards applicable to Government attorneys in (A)(i) differ from those for non-attorney support personnel in (A)(ii).

## II

The Court appears to believe that there is something in the history of Rule 6(e) that gives it license to ignore the Rule's plain language. I disagree. The history of the drafting of a rule can justify a court in deviating from clear language only if that history leaves no question as to the meaning of the rule. See, *e. g.*, *Bread Political Action Committee* v. *FEC*, 455 U. S. 577, 580–581 (1982); *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980). Even the partial history provided by the Court is at best ambiguous and wholly insufficient to overcome the plain language of the Rule. And elements of the Rule's history that are ignored by the Court make clear that (A)(i) means just

what it says, *i. e.*, "government attorneys" are entitled to grand jury materials for the full range of their assigned duties, whatever may be their responsibilities.

## A

The direct predecessor of (A)(i) was adopted in 1946. As initially promulgated, Rule 6(e) provided, in relevant part:

"Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the *attorneys for the government* for use in the performance of their duties." (Emphasis added.)

In interpreting this Rule, the Court places almost total reliance upon the following comment in the Advisory Committee Notes:

"Government attorneys are entitled to disclosure of grand jury proceedings . . . inasmuch as they may be present in the grand jury room during the presentation of evidence. The rule continues this practice." Advisory Committee Notes, 18 U. S. C. App., p. 1411.

Even the Court concedes, however, that Rule 6(e) was never intended to limit disclosure to only those Government attorneys who were actually present in the grand jury room. See *ante*, at 429, n. 11. Plainly, for example, grand jury materials may be disclosed to superiors within the Justice Department. See, *e. g.*, *United States* v. *United States District Court*, 238 F. 2d 713 (CA4 1956), cert. denied *sub nom. Valley Bell Dairy Co.* v. *United States*, 352 U. S. 981 (1957).

Thus, the curious line announced by the Court today appears nowhere in either the Advisory Committee Notes or the Rule itself. Further historical examination reveals, moreover, that the Rule was understood by its drafters to permit disclosure to attorneys throughout the Department of Justice, and that the Rule consistently has been applied in just such a manner ever since it was adopted.

452

B

The historical setting and the records of the Advisory Committee on Criminal Rules reveal that the original draftsmen of Rule 6(e) intended the Rule to authorize automatic disclosure to attorneys throughout the Department of Justice. In the late 1930's and early 1940's, grand jury transcripts were regarded as the property of the Government. See Lewin, The Conduct of Grand Jury Proceedings in Antitrust Cases, 7 Law & Contemp. Prob. 112, 121, 125 (1940). It was recognized that the grand jury is a criminal investigatory body that may not be used as a mere discovery tool, see, *e. g., In re National Window Glass Workers*, 287 F. 219 (ND Ohio 1922). But when the grand jury investigation was brought in good faith for purposes of possible criminal prosecution, grand jury transcripts and materials were on several reported occasions made available to other Government attorneys or other governmental units for use in pursuing related civil litigation and for other purposes. See, *e. g., In re Grand Jury Proceedings*, 4 F. Supp. 283 (ED Pa. 1933) (minutes of grand jury that led to indictment for violation of prohibition laws disclosed for use in subsequent action to revoke beer permit); *In re Bendix Aviation Corp.*, 58 F. Supp. 953 (SDNY 1945) (grand jury materials used by Department of Justice in preparing civil antitrust action).[3]

Nevertheless, when the Federal Rules of Criminal Procedure were first proposed, no provision was included for disclosure of grand jury materials to Government attorneys. In fact, neither the first nor the second draft of the Federal

---

[3] See also, *e. g., In re Crain*, 139 Misc. 799, 250 N. Y. S. 249 (Gen. Sess. 1931) (minutes disclosed to Police Commissioner for investigation of public corruption); *In re Attorney General of United States*, 160 Misc. 533, 291 N. Y. S. 5 (Cty. Ct. 1936) (state grand jury minutes disclosed for use by Attorney General of the United States); Morse, A Survey of the Grand Jury System, Part II, 10 Ore. L. Rev. 295, 336–337, n. 200 (1931) (same). Cf. *In re Texas Co.*, 27 F. Supp. 847, 851 (ED Ill. 1939) (upholding grand jury subpoenas, even assuming that the evidence might help the Government in its prosecution of other pending indictments).

Rules of Criminal Procedure contained any provision relating to the grand jury. Rule 80 of the third draft concerned the grand jury; and by the seventh draft (also known as the "First Preliminary Draft"), that Rule (then numbered Rule 7(e)) had come much closer to its final form. The Rule still required a court order for any disclosure, however. See generally Orfield, The Federal Grand Jury, 22 F. R. D. 343, 346–357 (1959) (hereinafter Orfield).

There were numerous objections to the narrowness of this Rule. Assistant Attorney General Wendell Berge remarked:

> "It . . . seems to me that the rule, read literally, has the effect of preventing a United States Attorney, or other authorized government attorney, from discussing developments before the grand jury with the Attorney General, an Assistant Attorney General, or other authorized Department of Justice officials. I cannot believe that such a result was intended and I think that appropriate exception ought to be made in the rule to cover this situation." 2 Advisory Committee on Federal Rules of Criminal Procedure, Preliminary Draft: Comments, Recommendations and Suggestions Concerning the Proposed Federal Rules of Criminal Procedure 355 (1943).

Judge Paul J. McCormick of the Southern District of California raised the same objection:

> "As a matter of common practice the United States Attorney uses the grand jury transcript rather freely with investigators and attorneys for the various governmental agencies. . . . If the rule contemplates a restriction on the United States Attorney's use of the transcript, I believe that he should be excepted from the provision requiring the permission of the court." *Ibid.*

Similarly, Robert M. Hitchcock expressed concern that the Rule as then drafted would prevent a prosecuting attorney

from discussing the evidence before a grand jury "with his superior or with representatives of the Department of Justice," 1 *id.*, at 60. Similar views were expressed by others. See 1 *id.*, at 59 (remarks of United States Attorney Joseph T. Votava); 2 *id.*, at 354 (summary of suggestions of federal judges of Michigan); 2 *id.*, at 355 (letter of United States Attorney Joseph F. Deeb).

The next draft (Second Preliminary Draft) reflected these comments; the first sentence of the Rule was amended to its final form, authorizing disclosure to "the attorneys for the government for use in the performance of their duties." The scope of the amended Rule did not go unopposed. Judge S. H. Sibley of the Court of Appeals for the Fifth Circuit proposed deleting the entire first sentence of the Rule, and revising the Rule to require a court order for any disclosure, including disclosure by the attorneys who had been in the grand jury room to other Justice Department attorneys. Judge Sibley explained his proposed change as follows:

> "The change . . . is due to a belief that secrecy of the proceedings before the Grand Jury ought to be maintained except when otherwise ordered by the judge. A general rule permitting disclosures to attorneys for the Government is thought unwise, apparently having no check except the desire of the particular Government official who undertakes to get or make the disclosure. Embarrassing leaks might easily occur under so broad a rule applying to so many persons." 4 *id.*, at 13 (1944).

There can be no doubt that the draftsmen realized the need for precision in the language of the Rules; and in light of the numerous criticisms of the prior version of the Rule and Judge Sibley's comments on the amended version, there also can be little question that the draftsmen were fully aware of the breadth of the Rule they were proposing. If they had intended the Rule to have the crabbed meaning now advanced by the Court, they surely would have amended the first sentence of the Rule. Yet they left that sentence as it

was, while making other changes in the Rule. I have no doubt that, in doing so, they realized and intended that the Rule would allow disclosure of grand jury materials to all "government attorneys" for use in performing their assigned duties.[4]

Lester Orfield, one of the members of the Advisory Committee, later observed:

> "[I]n comparison with the right of the defendant and of third parties, the right of the government to see and use the grand jury minutes is *incomparably the greatest*. And the government obtains discovery without first having to make a motion for it. The first sentence of Rule 6(e) provides for disclosure to the government for use in the performance of duties and says nothing about court action." Orfield 451 (emphasis added).

In view of the background and history of the drafting of the 1946 Rule, I do not believe there can be any doubt that Orfield and the other draftsmen were aware of the breadth of the provision for disclosure to Government attorneys.

## C

The subsequent application of Rule 6(e) further confirms the conclusion that it authorizes disclosure to Government attorneys for use in the full range of the duties assigned to them by the Attorney General. Throughout the 1940's and 1950's, those conducting grand jury investigations regularly referred matters to other attorneys in the Department of Justice if civil litigation proved desirable, and, in accordance with Rule 6(e), grand jury transcripts and materials were

---

[4] The Court somehow reads the above history as referring only to disclosure for prosecutorial purposes. See *ante*, at 429, n. 11. Those who commented on the various drafts of the original Rule spoke of the need for disclosure to other "Department of Justice officials," "attorneys for the various governmental agencies," and "representatives of the Department of Justice." Much as the Court may wish otherwise, they did not refer to disclosure only to what the Court characterizes as the "prosecution team."

made available to the attorneys pursuing the civil suits. This practice appears to have been most frequent in the antitrust area. See, *e. g.*, *United States* v. *Procter & Gamble Co.*, 19 F. R. D. 122 (NJ 1956), rev'd on other grounds, 356 U. S. 677 (1958); Hollabaugh, Development of an Antitrust Case, 4 A. B. A. Antitrust Section 14, 18–22 (1954). In addition, civil fraud suits of the sort at issue here often were referred to Civil Division attorneys after grand jury investigations revealed that criminal prosecution was inappropriate or that dual civil and criminal proceedings were warranted. See, *e. g.*, *United States* v. *Ben Grunstein & Sons Co.*, 137 F. Supp. 197 (NJ 1955). See also *United States* v. *General Motors Corp.*, 15 F. R. D. 486 (Del. 1954) (civil damages action under Elkins Act).

On occasion, the use of grand jury materials in civil actions exceeded the bounds of Rule 6(e). Agency attorneys, who are not within the definition of "attorneys for the government" contained in Rule 54(c), were at times allowed access to grand jury materials for their own purposes without first obtaining a court order, as required by Rule 6(e), see *In re April 1956 Term Grand Jury*, 239 F. 2d 263 (CA7 1956); and grand juries were on occasion convened for the sole purpose of obtaining evidence for civil litigation, see Report of The Attorney General's National Committee to Study the Antitrust Laws 344–345 (1955); Chadwell, Antitrust Administration and Enforcement, 53 Mich. L. Rev. 1133, 1134–1135 (1955). Throughout this period, however, courts regularly recognized that Rule 6(e) authorized Government attorneys to use grand jury materials in subsequent civil litigation, provided the grand jury itself had been convened and conducted for valid criminal investigatory purposes. See, *e. g.*, *In re Petroleum Industry Investigation*, 152 F. Supp. 646 (ED Va. 1957); *United States* v. *Procter & Gamble Co., supra; Herman Schwabe, Inc.* v. *United Shoe Machinery Corp.*, 194 F. Supp. 763 (Mass. 1958); *United States* v. *Ben Grunstein & Sons Co., supra; United States* v. *General Motors Corp.*,

*supra.* Cf. *United States* v. *Wallace & Tiernan Co.*, 336 U. S. 793 (1949) (in civil antitrust case Government was entitled to production of documents previously subpoenaed by grand jury but returned to owners when the indictment was dismissed).

The leading case on this point is this Court's decision in *United States* v. *Procter & Gamble Co.*, 356 U. S. 677 (1958). There, the Government had convened and conducted a grand jury investigation of possible antitrust violations in the soap industry. Counsel for the Government had stated in an affidavit that the investigation served dual purposes: first, to determine whether there were violations of the antitrust laws, and, second, to determine "what action should be taken to enforce those laws through criminal proceedings, *civil proceedings or both.*" *United States* v. *Procter & Gamble Co.*, 14 F. R. D. 230, 233 (NJ 1953) (emphasis added). No indictment was returned, but soon after the conclusion of the grand jury proceeding the Government filed a civil suit. In preparing that suit, the Government used the grand jury transcript without seeking a court order, and defendants also sought access to the grand jury transcript. The District Court granted the defendants' motion, holding that defendants should be entitled to the same right of access to these materials as the Government. 19 F. R. D. 122 (1956). This Court reversed, ruling that the defendants had not made the requisite particularized showing of need for disclosure of the testimony. 356 U. S., at 682.

The validity of the Government's use of the grand jury transcript for civil purposes was not directly before the Court in *Procter & Gamble*, but since that use had played a central role in the District Court's analysis, this Court addressed the issue. In so doing the Court made clear that it regarded the Government's civil use of the materials as entirely proper:

"[The District Court] seemed to have been influenced by the fact that the prosecution was using criminal procedures to elicit evidence in a civil case. If the prosecu-

tion were using that device, it would be flouting the policy of the law. . . .

"*We cannot condemn the Government for any such practice in this case.* There is no finding that the grand jury proceeding was used as a short cut to goals otherwise barred or more difficult to reach. It is true that no indictment was returned in the present case. But that is no reflection on the integrity of the prosecution. For all we know, the trails that looked fresh at the start faded along the way. What seemed at the beginning to be a case with a criminal cast apparently took on a different character as the events and transactions were disclosed. *The fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case.*" *Id.*, at 683–684 (emphasis added).

Since this Court was aware that the Government was using grand jury materials to prepare its civil case without a court order, it is crystal clear that the Court approved of Government attorneys' use of grand jury transcripts and materials in pursuing civil cases, so long as the grand jury was validly convened and the inquiry conducted for criminal investigatory purposes, and not simply used as a substitute for civil discovery.[5] See also *United States* v. *Procter & Gamble Co.*, 180 F. Supp. 195 (NJ 1959) (after remand).

---

[5] The Court today blandly ignores Justice Douglas' opinion for the Court in *Procter & Gamble*, and instead places great weight on Justice Whittaker's concurring opinion, 356 U. S., at 684–685. Justice Whittaker expressed concern that grand jury proceedings might be abused for civil investigative purposes, and stated that he "would adopt a rule" requiring both the Government and private parties to show particularized need before disclosure, *id.*, at 685. The majority seems to believe that Justice Whittaker was describing the state of existing law, and attributes the same view to the other Members of the Court in *Procter & Gamble*. See *ante*, at 434, n. 19. Examination of Justice Whittaker's actual language reveals, however, that he was simply expressing his personal views regarding the rule that he *would adopt* if he were making the rules. He was not describing existing law, as was Justice Douglas. It bears note, moreover, that

In 1961, the Office of Legal Counsel of the Department of Justice examined the Department's practice of using grand jury materials for civil litigation. Not surprisingly, that Office's conclusions echoed those the *Procter & Gamble* Court had reached three years earlier. In summarizing its conclusions, that Office's memorandum stated that "[when] grand jury evidence may be relevant in connection with, or may suggest the advisability of instituting, other criminal *or civil* proceedings by the Department of Justice[,] . . . disclosure may be made *without court order* . . . ." Memorandum from Nicholas deB. Katzenbach, Assistant Attorney General, Office of Legal Counsel, to Byron R. White, Deputy Attorney General, p. 1 (Dec. 21, 1961) (emphasis added). The body of the report elaborated on this conclusion:

> "The decisions are quite clear that, in some situations at least, grand jury evidence may be used for purposes of civil trial. In *United States* v. *Procter & Gamble,* . . . the Supreme Court refused, in a civil antitrust case, to order wholesale discovery of grand jury testimony, stating that, absent any showing of bad faith on the government in subverting the grand jury process, the evidence obtained before the grand jury 'could . . . be used in a civil case.' . . . [A number of other] cases sanction the use by government attorneys of grand jury evidence for the purpose of preparing a civil case, provided the grand jury investigation was brought in good faith for purposes of possible criminal prosecution. . . .
>
> ". . . I conclude that grand jury evidence may be used by Department of Justice attorneys in connection with other criminal and civil litigation conducted by the government, subject to the power of the courts to quash the grand jury subpoenas or enjoin the grand jury investiga-

none of the other five Justices in the majority saw fit to join Justice Whittaker's concurring opinion. Nor did the three dissenting Justices suggest that Rule 6(e) barred the Government from using materials from validly convened grand juries in pursuing subsequent civil litigation.

tion (and, in civil cases, to order full discovery to the other party) if they feel the grand jury proceeding is being subverted or abused." *Id.*, at 10–13 (citations and discussion of cases omitted).

Throughout the 1960's and 1970's, the Department of Justice adhered to this standard and continued to disclose grand jury materials to other attorneys without court order, for use in pursuing civil actions involving the same or related matters as those in the criminal investigation.[6] On several reported occasions, courts upheld this use of grand jury materials. See, *e. g.*, *United States* v. *General Electric Co.*, 209 F. Supp. 197, 198–202 (ED Pa. 1962); *Washington* v. *American Pipe & Constr. Co.*, 41 F. R. D. 59, 62 (WD Wash., Ore., Haw., ND Cal., SD Cal. 1966); *In re July 1973 Grand Jury*, 374 F. Supp. 1334, 1337 (ND Ill. 1973); *United States* v. *Wohl Shoe Co.*, 369 F. Supp. 386 (NM 1974). See generally Note, Administrative Agency Access to Grand Jury Materials, 75 Colum. L. Rev. 162, 166–169 (1975). Thus, when Congress reconsidered Rule 6(e) in 1977, it did so against a backdrop of more than 30 years of consistent Justice Department practice of using grand jury materials without court order in investigating and prosecuting civil actions.

## D

The Court does not suggest that Congress sought to change the meaning of the provision allowing disclosure to Government attorneys when it amended Rule 6(e) in 1977, nor would such a suggestion be tenable. Although Congress

---

[6] See, *e. g.*, U. S. Dept. of Justice, A Practical Handbook of Federal Grand Jury Procedure 58–60 (2d ed. 1968); United States Attorneys' Manual § 9–11.367 (Feb. 16, 1982); Friedman, Parallel Investigations: Interagency Sharing of Information and Freedom of Information Act Problems, reprinted in part in ABA, Parallel Grand Jury and Administrative Agency Investigations 816, 819 (1981).

slightly modified the language of that provision[7] and placed it in a separate subparagraph, (A)(i), there is no indication that Congress intended to alter the meaning of the provision. On the contrary, as Representative Mann stated in explaining the amendments to the Members of the House:

> "[Subparagraph (A)(i)] continues a policy of present rule 6(e). Disclosure of grand jury information may be made to 'an attorney for the Government for use in the performance of such attorney's duty.' This language, which is similar to language presently in the rule, *is not intended to change any current practice.*" 123 Cong. Rec. 25194 (1977) (emphasis added).

See also, *e. g.,* S. Rep. No. 95–354, pp. 5–8 (1977).

The Court nevertheless asserts that implicit in Congress' understanding of Rule 6(e) in 1977 was the belief that Government attorneys were entitled to automatic access to grand jury materials only for criminal purposes. To support this position, the Court quotes at length from the Senate Report on the Rule, S. Rep. No. 95–354, *supra,* and from testimony by Acting Deputy Attorney General Richard Thornburgh, Proposed Amendments to the Federal Rules of Criminal Procedure: Hearings before the Subcommittee on Criminal Justice of the House Committee on the Judiciary, 95th Cong., 1st Sess., 67 (1977) (hereafter Hearings). Yet the primary focus of the 1977 hearings and amendment was on use of grand jury materials by agencies *outside the Department of Justice,* and both of the statements relied on by the Court concerned this *agency* use of grand jury materials.[8] In my

---

[7] The 1977 amendments replaced the phrase *"the attorneys* for the government for use in the performance of *their duties"* with *"an attorney* for the government for use in the performance of *such attorney's duty."*

[8] Acting Deputy Attorney General Thornburgh's statement, for example, was in response to an inquiry by Representative Mann concerning "grand jury information being made available to *other* agencies," Hearings, at 66 (emphasis added). Representative Mann asked if Thornburgh had

view, two ambiguous statements in connection with a quite different issue are hardly a balance for the clear historical evidence of more than 30 prior years of routine access to grand jury materials by Department of Justice attorneys pursuing civil matters.

Moreover, other statements in the 1977 legislative history—statements that are ignored by the Court—reveal that

---

described existing practice accurately when he stated that "the amendment will not permit the Department of Justice to take advantage of or make disclosures *to investigative agents or experts* in order to aid *other Federal agencies* in conducting *their own* [civil or criminal] investigations." *Id.*, at 55 (prepared statement of Acting Deputy Attorney General Thornburgh) (emphasis added).

Naturally, Congress would have understood Mr. Thornburgh to be answering the question he had just been asked—about disclosure of grand jury materials to *other agencies*—and not to be expressing his views concerning use by the Justice Department itself. In reaching a different conclusion, the Court places great emphasis on Thornburgh's reference to "civil fraud" actions on behalf of the Government. Yet, contrary to the Court's assumption, civil fraud suits are not the exclusive province of any one division of the Department. Other divisions and outside agencies, including the Internal Revenue Service, see, *e. g., United States* v. *LaSalle National Bank*, 437 U. S. 298, 308–310 (1978), regularly pursue civil fraud actions on behalf of the Government. In the portion of his testimony immediately following that quoted by the Court, Mr. Thornburgh went on to refer to disclosure to the IRS. In summarizing his answer, he stated:

"In all of those instances and any others that we could discuss hypothetically *with respect to agencies such as the SEC and others*, there is constantly on the part of the United States Attorney's Office and the Department of Justice an awareness of the compartmentalization of the matters that they are dealing with." Hearings, at 67 (emphasis added).

When one considers Mr. Thornburgh's testimony as a whole and in context, it scarcely seems likely that Congress would have based its understanding of Justice Department practice upon his single ambiguous reference to civil fraud actions. This is especially true, given that a survey of United States Attorneys and the Justice Department conducted by the House Judiciary Committee in connection with this very amendment had disclosed that existing practice was to disclose grand jury information *to other divisions of the Justice Department without court order.* See H. R. Rep. No. 95–195, p. 13 (1977) (additional views of Rep. Wiggins) (quoted *infra*, at 463–464).

Congress fully understood that (A)(i) grants attorneys within the Department of Justice automatic access to grand jury materials for the full range of their duties, including their responsibility over civil matters. When it first proposed an amendment to Rule 6(e) in 1977, the Advisory Committee on Rules emphasized the difference between "attorneys for the government" and other Government personnel, including employees of administrative agencies. See 18 U. S. C. App., pp. 1024–1025 (1976 ed., Supp. V). The Committee set forth the definition of "attorney for the government" contained in Rule 54(c), see n. 1, *supra,* and then quoted the following language from *In re Grand Jury Proceedings,* 309 F. 2d 440 (CA3 1962):

> "The term attorneys for the government is restrictive in its application . . . . If it had been intended that the attorneys *for the administrative agencies* were to have free access to matters occurring before a grand jury, the rule would have so provided." *Id.,* at 443 (emphasis added).

This quote—and the opinion in which it appears—clearly draws a distinction between "attorneys for the government," who were entitled to free access to grand jury materials, and attorneys for administrative agencies, who were not entitled to such automatic disclosure.

This understanding was shared not only by the Advisory Committee, but also by Congress itself. Representative Charles Wiggins, dissenting from the decision of the House Committee on the Judiciary to defer action on Rule 6(e) (a decision with which the Senate disagreed, and on which the Senate's view ultimately prevailed), gave the following Report regarding existing disclosure practices:

> "In the course of considering [the amendment to Rule 6(e)], U. S. Attorneys and the Justice Department were surveyed as to their perception of current practice regarding grand jury disclosures. Although the view was

not strictly uniform, there was general agreement that disclosures at least to criminal investigative agents *and other divisions within the Justice Department* were permissible without court order." H. R. Rep. No. 95–195, p. 13 (1977) (additional views of Rep. Wiggins).

As noted above, Representative Mann informed the Members of the House that the amendment was "not intended to change any current practice" regarding disclosure of grand jury materials to attorneys within the Department of Justice. 123 Cong. Rec. 25194 (1977). In floor debate, Representative Holtzman expressed the view that "grand jury proceedings ought not to be disclosed to *other governmental agencies* without strict safeguards." *Id.*, at 11111. Her statement was representative of the view of the courts. This view was later echoed by Representative Wiggins. In explaining to Members of the House the Senate amendment that ultimately prevailed, he emphasized yet again the differing standards for *Government* attorneys and for *agency* attorneys and personnel:

> "There will come a time when a grand jury uncovers violations of *civil* laws, or State or local laws. It then becomes the duty of the attorney for the Government, *if he or some other attorney for the Government cannot act on that information*, to turn it over to the appropriate governmental agency so that such agency can do its duty. However, the attorney for the Government may do this only after successfully seeking an order of the court." *Id.*, at 25196 (emphasis added).

See also, *e. g.*, Hearings, at 47–54 (statement of Judge Becker).

These statements all reflect an awareness of the prevailing practice, under which attorneys throughout the Department of Justice were entitled to use grand jury materials in performing all their responsibilities, but could not turn the material over to *another agency* for that agency's use except by

court order. To me, there can be no doubt that Congress understood that under Rule 6(e) all attorneys in the Department of Justice were authorized to use grand jury materials in the full range of their duties—including civil matters—and chose to leave that standard unchanged. This is in marked contrast to the treatment of assisting personnel, including personnel of other agencies, to whom automatic disclosure is permitted under (A)(ii) only for *criminal* purposes. History thus conclusively buttresses the plain language of the Rule, compelling the conclusion that Government attorneys, as defined in Rule 54(c), are entitled to grand jury materials in pursuing civil matters, regardless of whether they themselves were assigned to the grand jury investigation or prosecution.[9]

## III

The Court relies heavily upon perceived policy considerations that the Court seems to think favor its approach. The language and the history of the Rule are so clear that reference to policy considerations should be wholly unnecessary. Congress, in adopting (A)(i), already has made the relevant policy choices. In any event, however, the Court has erred gravely in its assessment of the policy implications of the standard it sets forth and of the standard which I believe actually appears in (A)(i).

The Court asserts that disclosure for civil use would do "affirmative mischief" in three ways. See *ante*, at 431–434. First, it is argued that "disclosure to Government bodies raises much the same concerns that underlie the rule of secrecy in other contexts." *Ante*, at 432. Presumably, the

---

[9] The Court seeks support for its reading of the Rule in a 1982 American Bar Association proposal to amend (A)(i). See *ante*, at 440–441, n. 32. I scarcely think that this Court need rely on an interpretation of the drafters' views supplied five years later by the ABA, when the actual legislative history is readily available. As the ABA recognized, the plain language of the Rule is contrary to the decision reached today. If the Rule is to be amended, as the ABA urged, that amendment should take place through the normal rules process, and not through a decision of this Court.

"concerns" to which the Court refers are those set forth in *Douglas Oil Co.* v. *Petrol Stops Northwest*, 441 U. S. 211 (1979):

> "First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against the indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Id.*, at 219.

In raising the specter of lost secrecy, the Court ignores the fact that normal Justice Department practice—which was followed in this case—calls for disclosing grand jury materials for civil use only *after* the grand jury proceeding and criminal investigation have been completed, see United States Attorneys' Manual § 9–11.367 (Feb. 16, 1982). That being the case, the secrecy concerns suggested by the Court lose much of their relevance; there is, for example, no risk that potential defendants may flee or try to influence grand jurors or witnesses.

Furthermore, attorneys for the Justice Department are officers of the court bound to high ethical standards. The Court itself recognizes that "disclosure to Justice Department attorneys poses less risk of further leakage or improper use than would disclosure to private parties or the general public," *ante*, at 445, and notes "Congress' special concern that nonattorneys were the ones most likely to pose a danger of unauthorized use," *ante*, at 442. The Court nevertheless appears to premise its analysis on the assumption that Gov-

ernment attorneys routinely will violate their duty to uphold grand jury secrecy, in accordance with the requirements of Rule 6(e). That Rule embodies a clear standard of secrecy, subject to a set of carefully delineated exceptions; and I, for one, am unwilling to accept this wholly unwarranted assumption on the part of the Court. Dissemination of grand jury materials beyond Justice Department attorneys will occur only if, upon examination, the materials are found to warrant a civil action by the United States, and then only upon receipt of a court order pursuant to Rule 6(e). At that point, any interest in secrecy would be clearly outweighed by the public interest in disclosure.

The Court next asserts that a blanket rule against access to grand jury materials for civil purposes is needed to prevent the possibility that the grand jury will be used improperly as a tool for civil discovery. I fully agree with the Court that use of grand jury proceedings for the purpose of obtaining evidence for a civil case is improper.[10] But the mere *potential* for such abuse does not justify this Court's precluding Department of Justice attorneys from reviewing grand jury materials in assessing and prosecuting civil actions in the vast majority of cases where the grand jury has been convened and conducted for valid criminal investigatory purposes. As the Court recognized in *United States* v. *Procter & Gamble Co.*, 356 U. S. 677 (1958), the proper approach to the danger of abuse is not to adopt an across-the-board ban on civil use of grand jury materials by those not assigned to the criminal investigation, but rather for a district court to impose appropriate sanctions if it turns out that the grand jury process has

---

[10] I find it a bit ironic, however, that the Court relies solely on this Court's decision in *United States* v. *Procter & Gamble Co.*, 356 U. S. 677 (1958), for the above proposition, inasmuch as that decision itself recognized the Government's authority to use materials from a properly convened grand jury without a court order in pursuing a civil action—and thus is completely at odds with the Court's holding today. See *supra*, at 457–458.

been abused to elicit evidence for a civil case. In *Procter & Gamble*, this Court indicated that one available remedy for abuse would be compensating disclosure to civil defendants. In other cases it might prove appropriate to prohibit the Government from making any use of grand jury materials in prosecuting its civil case. And in egregious cases it might be proper to hold certain individuals in contempt. Here, however, the District Court found no grand jury abuse.[11]

Finally, the Court argues that civil use of grand jury materials would subvert the limitations on civil discovery and investigation that would otherwise apply. *Ante*, at 433–434. As the basis for this contention, the Court relies primarily on the Civil Division's access to the discovery provisions of the Federal Rules of Civil Procedure. The Court argues that the need for and limitations on this discovery method would be undermined by allowing Government attorneys automatic access to grand jury materials for use in civil actions. This argument rests on the assumption that the civil discovery provisions of the Federal Rules of Civil Procedure were designed with but a single Division of the Justice Department in mind. Plainly that is untrue. The Federal Rules of Civil

---

[11] In any event, the Court's standard does not meet the asserted problem of grand jury abuse. The Court suggests that a bright-line standard is needed to eliminate the temptation to initiate grand jury investigations for civil purposes and to avoid problems of detecting and proving grand jury misuse. See *ante*, at 432. Apart from the reality that this burns down the house to get rid of the mouse, the vague and indefinite standard actually adopted by the Court does not meet the concerns which the Court's opinion expresses. Even if one accepts the Court's wholly unsupported assumption that Government attorneys often misuse grand juries, the Court's own standard will leave much of the potential for misuse intact; the decision apparently continues to allow those assigned to the grand jury investigation or prosecution to make continued use of the grand jury materials in subsequent civil litigation. Under the Court's approach, reviewing courts will still be faced with the task of determining whether the grand jury was initiated for civil or criminal purposes, in those cases where a member of the investigative team has used grand jury materials in prosecuting a later civil case.

Procedure govern virtually all civil actions, the vast majority of which involve only private litigants. The civil discovery provisions were undoubtedly designed with these private litigants in mind, and the Civil Division of the Department has simply been relegated by the Court to the civil discovery provisions for lack of a better alternative.[12] Of course, if attorneys for the Justice Department are considering a civil action, they may not institute a grand jury in order to develop evidence for that civil case, but must make use of the available means for civil investigations. When a valid grand jury investigation has taken place, however, nothing in the Federal Rules of Civil Procedure precludes attorneys in the Justice Department from making use of the grand jury materials in preparing for and prosecuting civil suits.

Besides greatly overstating the interests that would be served by a blanket rule prohibiting attorneys from examining grand jury materials for possible civil prosecution, the Court also has given very short shrift to the public interests that are served by allowing Government attorneys access to

---

[12] In my view, the civil discovery provisions of the Federal Rules are wholly insufficient for the Department of Justice to carry out its responsibilities to pursue fraud claims effectively. Under the Federal Rules, discovery may not normally take place until *after* a complaint has been filed. Yet *before* filing a complaint, an attorney must satisfy himself that to the best of his knowledge "there is good ground to support it." Fed. Rule Civ. Proc. 11. In a typical action between private parties, the parties themselves will have sufficient personal knowledge to determine whether an action is warranted. Civil Division attorneys seldom have actual personal knowledge of the underlying facts, however, and frequently must undertake additional investigation before they will be able to ascertain whether litigation is appropriate. If limited to voluntary cooperation or the civil discovery provisions, therefore, those attorneys will be unable to pursue many frauds against the public. These same concerns led Congress to enact legislation authorizing the Antitrust Division to issue civil investigative demands, Pub. L. 87–664, § 3, 76 Stat. 548, 15 U. S. C. § 1312. See Report of the Attorney General's National Committee to Study the Antitrust Laws 344–345 (1955). The Civil Division has not been provided with similar authority to issue civil investigative demands.

grand jury materials for the full range of their responsibilities. The Court dismisses these interests as "nothing more than a matter of saving time and expense." *Ante,* at 431. This cavalier comment overlooks the vital importance of time and money in the proper functioning of any system. The unwarranted burdens that the Court's rule imposes upon the Department of Justice will not mean simply that the Government must pay more to keep the system operating. Rather, the additional time and expense will result in a substantial decrease in the Government's ability to enforce important laws in meritorious civil actions—thus striking a severe blow to the public interest.[13]

Even more importantly, however, the Court's casual dismissal of the interests involved as "mere time and money" displays a profound insensitivity to the nature and role of the Department of Justice. Ever since the enactment of the Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 92, both civil and criminal litigation responsibilities have been vested in the Attorney General and the several United States Attorneys. The Attorney General is *the* attorney for the Government. At one time the Attorney General served alone, for many years without a single clerk or aide. Even after the establishment of the Department of Justice in 1870, the Attorney

---

[13] It bears note, moreover, that not just the Government's time and money are at stake. Witnesses who have testified fully before the grand jury may have their schedules disrupted again for civil investigations. In many civil cases, a number of witnesses would undoubtedly be deposed in any event; but other witnesses will be forced to undergo the burden of appearing for testimony that would be unnecessary if Government attorneys had access to the grand jury materials. In addition, witnesses may die, their memories may fade, records may be lost, and statutes of limitations may run. Presumably, even under the Court's approach, Government attorneys could gain access to the grand jury materials through a court order in the first three of those situations—if the attorneys learned that the witnesses had testified before the grand jury or produced the relevant records. Where the statute of limitations has run, however, there would be no such relief.

General served with only a handful of assistants; they shared responsibility for all the Government's litigation, criminal and civil. See generally H. Cummings & C. McFarland, Federal Justice 78–92, 142–160, 218–229 (1937). As a practical matter, certain individuals may have had greater involvement in civil matters than others, but distinctions between those responsible for civil matters and those handling criminal matters were at one time unheard of. Over the years, the Department has grown dramatically, and a result has been the administrative separation of the Department into a number of Divisions, each of which has primary responsibility for a particular type of case. Even today, though, many of the Divisions have both civil and criminal enforcement responsibilities. See, *e. g.*, 28 CFR § 0.40(a) (1982) (Antitrust Division); 28 CFR §§ 0.55(c), (d), (f)–(i), (n), (s) (1982) (civil jurisdiction of the Criminal Division). Moreover, now, as in the past, the Attorney General has complete authority to assign either civil or criminal responsibilities, or both, to any attorney in the Department of Justice. See, *e. g.*, Rev. Stat. §§ 359, 360; 28 U. S. C. §§ 510, 515(a).[14]

The Department of Justice might well be referred to as the world's largest law firm, and its various Divisions work together toward the ultimate objective for which they were created—to promote the interests of the sovereign and of the public. Grand jury investigations of criminal activity of course play a major role in protecting the Nation and advancing the public interest by deterring violations of our laws. Many civil actions seek precisely the same object, however, and are of at least equal importance in promoting the public welfare. In a number of areas, Congress has enacted civil legislation that, together with related criminal law provi-

---

[14] Thus, for example, 28 U. S. C. § 515(a) provides:

"The Attorney General or any other officer of the Department of Justice . . . may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . which United States Attorneys are authorized by law to conduct . . . ."

sions, forms an integrated law enforcement scheme. This is, of course, true of the injunctive provisions of the Sherman Act that were at issue in *Procter & Gamble*. Most significantly for present purposes, the civil provisions of the False Claims Act at issue here were enacted as part of an integrated scheme of civil and criminal law enforcement. See *United States* v. *Bornstein*, 423 U. S. 303, 305–307, n. 1 (1976). In enacting the False Claims Act, Congress instructed the United States Attorneys "to be diligent in inquiring into *any* violation" of the Act, Rev. Stat. § 3492 (emphasis added). There can be little doubt that Congress expected—and continues to expect—attorneys for the Government to investigate the possibility of both criminal and civil violations when applying this and other integrated enforcement schemes. Under these circumstances, it would at the very least be anomalous if a Government attorney should discover evidence pointing to civil violations during a grand jury investigation, but fail to refer these violations to other attorneys within the Department of Justice for possible prosecution. Indeed, such a failure might well merit a disciplinary inquiry.

In some cases, of course, even before a grand jury investigation starts the Department of Justice will have sufficient information to justify filing a civil complaint. In many other cases, however, the Department will have no more than a suspicion of civil violations; and on occasion, the relevant information will come as a complete surprise. In those cases, unless the attorney conducting the grand jury is entitled to disclose the substance of the grand jury investigation to attorneys within the Civil Division, those attorneys will remain oblivious to the existence of much illegal behavior and will not have sufficient basis even to file civil complaints. And until a complaint is filed, they will be unable to utilize the discovery provisions of the Federal Rules of Civil Procedure, upon which the Court places so much weight. Thus, the question is not simply whether the Civil Division is able to

afford the time and expense necessary to conduct a civil investigation. Rather, the real issue in many cases is whether the Government will be in a position to initiate any civil action at all.

Finally, perhaps the most troubling aspect of the Court's stilted holding is the opinion's virtual silence on any meaningful guidance for the lower courts and the Department of Justice. Plainly, any Government attorney, including any attorney normally assigned to civil cases, who has been assigned to the criminal grand jury investigation or prosecution is entitled to automatic access to grand jury materials for these criminal purposes. It also seems clear that, under the Court's standard, attorneys who take no part in the criminal investigation or prosecution are not entitled to automatic disclosure of the actual grand jury transcript and materials for civil purposes, without court authorization. With those two exceptions, today's opinion provides almost no guidance as to the permissible scope of Justice Department use of grand jury materials.

The Court frames the question presented by this case as being whether (A)(i) permits automatic disclosure of grand jury materials for "preparation and litigation of a civil suit by a Justice Department attorney *who had no part in conducting the related criminal prosecution.*" *Ante*, at 428 (emphasis added). The Court states that "[t]he policies of Rule 6 require that any disclosure *to attorneys other than prosecutors* be judicially supervised rather than automatic," *ante*, at 435 (emphasis added), and holds that "(A)(i) disclosure is limited to *use* by *those attorneys who conduct the criminal matters* to which the materials pertain," *ante*, at 427 (emphasis added). From these and similar statements, it is reasonable to read today's decision as allowing any Justice Department attorney who has participated in the grand jury investigation or prosecution—and thus already has had access to the grand jury materials—to make further use of those materials in preparing and litigating a related civil case. Logically, this must

mean that any attorney assigned by the Attorney General to assist in a criminal fraud investigation or prosecution may use the grand jury materials for subsequent civil fraud litigation. The Court deliberately chooses to avoid these issues, however, on the ground that they are not squarely presented by this case. *Ante,* at 431, n. 15. See also, *e. g., ante,* at 429, n. 11, 434, n. 19, 441–442, and n. 33.

In addition, I assume that, if a grand jury turns up plain evidence of fraud that properly should be pursued by Government lawyers, the Court would allow a prosecutor to disclose the substance of the violations to his colleagues, so that those attorneys might file a civil complaint—if they have not already done so—and commence civil discovery. And when a grand jury discovers fraud, the prosecutor surely should be able to seek a court order under Rule 6(e)(3)(C)(i) enabling him to disclose the relevant portions of the actual grand jury transcripts and materials to other attorneys for prosecution of the civil fraud claims. Here again, the Court plainly is aware of the issues, see *ante,* at 441–442, but fails to provide any guidance on their proper resolution.

Of course, the job of this Court is to decide the case before it, and not to issue advisory opinions on matters far afield. But to my mind, when the Court announces a standard that appears nowhere in the relevant Rule, that overturns more than 30 years of established practice, and that will force a complete reevaluation and restructuring of Justice Department procedures regarding use of grand jury materials, the Court has an obligation to provide some guidance to the Department and to other courts on vitally important issues that are fairly embraced by the decision. I find it curious that a majority of this Court feels no such duty.

## IV

The opinion of the Court today upsets longstanding practice of the Justice Department regarding disclosure of grand jury materials for civil use, without affording that Depart-

ment or the courts meaningful guidance on the permissible limits of disclosure to other attorneys *within the Department* in the future. Although the bounds of today's decision are wholly undefined, it is clear that the decision will greatly limit disclosure of grand jury materials for civil use; and it is inevitable that countless meritorious civil actions will never be investigated or prosecuted, unless the Attorney General routinely assigns civil fraud lawyers to help work up criminal fraud cases. On its face, this process will be a wasteful practice in terms of use of the time of Department lawyers. This result is contrary to the plain language and history of Rule 6(e)(3)(A)(i), and to elementary considerations of sound policy. I therefore dissent.