**UNITED STATES of America**

v.

**Joseph G. DiBONA, et al.**

**Civ. A. No. 83–1311.**

United States District Court,
Pennsylvania.

March 21, 1985.

**450**

Dennis C. Egan, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Bernard L. Shapiro, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the court is defendants' motion for reconsideration of my January 15, 1985 order denying their motion for a protective order. The defendants state two reasons why the January 15th order should be vacated. First, the information the government needs to discover is not relevant. Second, the government is relying upon "grand jury materials" in contravention of Fed.R.Crim.P. 6(e). After careful consideration of both these issues, the court will deny defendants' motion for the reasons set forth below. The facts of this instant action have been set out in detail in my Memorandum and Order of November 9, 1984. Each of the issues will be addressed separately.

DISCUSSION

A. Are the documents sought to be produced relevant?

Fed.R.Civ.P. 26(b)(1) provides that the parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." The parties will be given broad discretion as to what materials can be discovered.

In the instant action, the government seeks to obtain testimony from RDL employees concerning their labor and material records on a series of defense contracts undertaken by RDL. They also seek some of RDL's personnel and business records. Defendants argue that discovery should be limited to only the two contracts which are the basis of this action against them. The information which plaintiff seeks is relevant in calculating and proving that it suffered damages. The government is attempting to compare labor hours on other contracts to those that were logged on the ones now in question. Defendants have

not named any specific objections as to why this information should not be discovered or if it is overly burdensome or any other legal reason for reversing my order. Reconsideration on this basis will be denied.

**B. Is the discovery request based upon information derived from the illegal use of grand jury material?**

 The government is in possession of two audits conducted by the Defense Contract Audit Agency (DCAA). These audits were performed on the two contracts that are the subject of this civil action. The history of how the audit was conducted will be helpful in understanding why the defendants' contention must be rejected.

The DCAA is responsible for auditing defense contract projects as required by the Department of Defense. The two contracts which underlie this civil action for false claims were the subject of an audit in 1979. The agency conducts audits in accordance with legislative power delegated to it by 32 C.F.R. 7–104.41(A)–(C). Subsection (b)[1] authorizes the contracting officer or his representatives to examine the books and business records of the contractor to determine if they properly reflect all direct and indirect costs associated with performing it. The DCAA has the right to examine the records at all reasonable times.

The audits conducted by DCAA in 1979 were incomplete because the defendants withheld access to certain key records. As a result, the DCAA issued a "qualified audit" report noting that certain information was lacking.

In 1982 a grand jury indicted RDL, Inc. and Messrs. Rights and DiBona for, *inter alia*, submitting false and fictitious statements to the government along with obstructing the DCAA audit.

As part of the grand jury process, the business records detailing the labor and material costs of two defense projects were subpoenaed. A DCAA agent, at the request of the government, examined these records and based on their information he was able to complete the 1979 audits of RDL's contract work. The irregularities the audits revealed were instrumental in securing the convictions of Messrs. Rights and DiBona. The use of the business records in the antecedent criminal action is not challenged by the defendants. They do, however, object to the use of the audit in the subsequent civil action believing that it constitutes illegal use of grand jury material.

The Federal Rules of Criminal Procedure provide that matters occurring before the grand jury may not be disclosed unless otherwise provided for by the rules. Rule 6(e)(2). Rule 6(e)(3)(B) states that "grand jury material" shall not be utilized except to assist the attorney for the government in the performance of his duties to enforce federal criminal law. The rules do provide that grand jury material may be disclosed by court order.

It is the defendants' fervent contention that the audit was the product of the grand jury process; that it could not be used outside of the criminal proceeding and that since the government did not obtain a court order releasing the audit, its use is forbidden and the complaint must be dismissed. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983). In my memorandum of December 7, 1984, addressing a similar issue raised by the defendants, I discussed the *Sells* decision by noting:

...[T]he Supreme Court held that attorneys in the Civil Division of the Justice Department may not have automatic ac-

---

1. 7–104.41 Audit by Department of Defense reads in part:
 (b) ... [T]he Contracting Officer or his representatives shall have the right to examine books, records, documents, and other evidence and accounting procedures and practices, sufficient to reflect properly all direct and indirect costs of whatever nature claimed to have been incurred and anticipated to be incurred for the performance of this contract.
 * * * * * *
 (c) ... The right of examination shall extend to all documents necessary to permit adequate evaluation of the cost or pricing data submitted, along with the computations and projections used therein.

cess to and disclosure of grand jury materials in the possession of the prosecutors but must instead seek a court order for access to this evidence. *Sells* [103 S.Ct.] at 3147.

The Court's decision was based upon three main considerations all flowing from the historical policy of preserving grand jury secrecy. First, the court believed that if grand jury matters and information were disclosed to persons other than the prosecutor involved in the criminal proceeding it would diminish the willingness of witnesses to come forward and testify fully with candor. If a witness believes he may have to continuously appear before a myriad of judicial bodies investigating the subject he has information about, it may inhibit the citizen's desire to come forward and testify. *Sells* at 3142.

Second, because of the active role taken by the government's attorneys during a grand jury investigation, automatic disclosure may invite abuses of the process through manipulation of the grand jury to ferret out additional evidence useful in a civil suit. The grand jury has investigative powers not available to a civil attorney through normal discovery procedures. The use of a grand jury to elicit this information in a civil action is *per se* improper. *United States v. Proctor and Gamble*, 356 U.S. 677, 683–684 [78 S.Ct. 983, 986–987, 2 L.Ed.2d 1077] (1958).

And lastly, as a corollary to the previous point, if the government was allowed unlimited access to grand jury material, it would circumvent the carefully crafted and more limiting discovery rules material, it would circumvent the carefully crafted and more limiting discovery rules imposed upon it in a civil action. *Sells, supra,* at 3143.

*United States of America v. DiBona,* 601 F.Supp. 1162, 1164 (1984).

I believe that the rule of law announced in the *Sells* decision is inapplicable to these facts for the following reasons. First, there is a question as to whether these business records are grand jury materials since the records do not directly or indirectly reveal what transpired before the grand jury. *In Re Grand Jury Matters (Catania),* 682 F.2d 61, 63 (3d Cir.1982). But even more fundamental than that issue is that the three basic concerns expressed by the court in *Sells* are not present in this fact pattern. First, the business records used by the DCAA do not impinge the secrecy of the grand jury process. Second, I do not view the use of the DCAA audit in this proceeding as the result of an automatic disclosure by the Justice Department's Criminal Division to its Civil Division counterpart. The DCAA viewed the business records under *its* congressional authority to examine material and labor costs of defense contracts. Defendants do not contend that the audit or the examination by DCAA of their records was not authorized. That the results of the audit were used in both a criminal proceeding and this civil action is not proof that a violation occurred. It cannot be said that information was illegally disclosed when the party who saw it was authorized by Congress to see it. The DCAA's action will not, in my view, invite abuses of the grand jury process by allowing the government's criminal attorney to manipulate the grand jury to ferret out useful evidence in civil suits. The legitimate exercise of the DCAA's authority to review business records does not come at the expense of the rules governing discovery. The DCAA did not need the grand jury process to circumvent the system since it possessed the right and power to view the materials on its own authority. Defendants' motion for reconsideration will be denied. The use of the audit report generated by the DCAA is not the result of illegal use of grand jury material. An appropriate order follows.

### ORDER

AND NOW, this 21st day of March, 1985, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. Defendants' motion for reconsideration of the January 15, 1985 Order is DENIED.

2. Defendants shall produce those RDL, Inc. business documents requested by the plaintiff within ten (10) days of the date of this Order.·

3. Defendants shall comply with plaintiff's discovery request by designating within ten (10) days the person or persons with sufficient knowledge concerning RDL, Inc.'s defense contract transactions involving material costs and labor costs.

4. The depositions of the person or persons named in Order Number Three (3) shall be completed on or before April 15, 1985.