939 F.2d 746
 56 Fair Empl.Prac.Cas. 721,
56 Empl. Prac. Dec. P 40,888
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
v.
RECRUIT U.S.A., INC.; Interplace/Transworld Recruit, Inc.,
Defendants-Appellants.
 No. 89-16095.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 15, 1991.
Decided July 19, 1991.
 
 John R. Shiner, Baker & McKenzie, Los Angeles, Cal., for defendants-appellants.
 Susan L. Starr, E.E.O.C., Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before SNEED, TANG and THOMPSON, Circuit Judges.
 TANG, Circuit Judge:
 
 INTRODUCTION
 
 1
 On May 30, 1989, the United States Equal Employment Opportunity Commission ("EEOC") filed a complaint seeking an ex parte temporary restraining order and a preliminary injunction prohibiting Recruit, U.S.A., Inc. ("Recruit"), and Transworld Recruit, Inc. (d.b.a. Interplace) ("Interplace") from destroying, altering, or removing beyond the territorial limits of the United States certain business records pertaining to allegedly discriminatory practices engaged in by the two companies. EEOC argued that the information was essential to its investigation of charges of race, sex, and age discrimination by Recruit and Interplace. On June 22, 1989, the district court entered a preliminary injunction against the alteration or movement of the relevant documents pending final disposition of the EEOC's charges. Recruit and Interplace appeal the entry of the preliminary injunction and the district court's failure to assess sanctions against the EEOC for publicizing the charges. We affirm.
 
 BACKGROUND
 A. Factual and Procedural History
 
 2
 Recruit, a California corporation, operates an employment referral service primarily for Japanese companies. Interplace, which is also incorporated in California, recruits prospective employees for American and foreign companies operating in the United States.
 
 
 3
 On April 26, 1989, and May 2, 1989, the San Francisco Chronicle published two articles revealing allegedly discriminatory hiring practices engaged in by the two companies. The first article, which focused on Interplace, described an internal coding system used to sift prospective employees in accordance with the client's age, racial, ethnic, and sexual preferences.[1]
 
 
 4
 The second article addressed accusations of discrimination levelled against Recruit. It described an internal corporate memorandum that purportedly was posted in Recruit's offices for three months. The memo supposedly stated that IBM Japan sought job applications from recent college graduates, but did not want to consider foreigners. The memo instructed that African Americans and Caucasians were to be excluded from the recruitment process.
 
 
 5
 In response to these articles, the EEOC commenced an investigation of the two companies. Four former employees of the companies presented firsthand accounts of discriminatory practices at Recruit and Interplace. Ms. Sugimura and Mr. Jeremy Giddings attested to Interplace's coding system. Ms. Nora Stone described an incident of hiring discrimination by Interplace in filling an internal vacancy.[2] Mr. Paul Schmidtberger, a former Recruit employee, provided evidence of four separate instances where Recruit screened job applicants in accordance with clients' discriminatory preferences.
 
 
 6
 Based on this information, R. Gaull Silberman, the Vice-Chair of the EEOC, filed employment discrimination charges against Recruit and Interplace on May 26, 1989. The charges accused the two companies of violating section 703 of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Sec. 2000e-2, and section 4(b) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. Sec. 623(b).
 
 
 7
 Four days later, the EEOC filed an ex parte application for a temporary restraining order prohibiting Recruit and Interplace from altering, destroying, or moving outside the United States business documents and records relevant to the discrimination charges. The application explained the critical importance of these documents to the EEOC's investigation. As evidence of the urgency of its request, the EEOC submitted the sworn statement of Ms. Sugimura attesting that, while an employee at Interplace, she had been instructed to erase all race-coding data from the computer base because management anticipated an investigation into the company's practices. To protect against premature disclosure of its investigation (fearing that it would prompt the destruction or alteration of evidence), the EEOC filed its complaint under seal. The EEOC appended to the complaint copies of the charges filed against Recruit and Interplace.
 
 
 8
 The district court granted the temporary restraining order and motion to seal on the same day in which they were filed. Following service of the order upon the companies, the EEOC requested that the seal be lifted and issued a press release announcing the action against Recruit and Interplace. The district court granted the motion to lift the seal on June 1, 1989, making the EEOC charges appended to the complaint a matter of public record.
 
 
 9
 On June 22, 1989, the district court entered a preliminary injunction, the scope of which largely mirrored the temporary restraining order. The court found that:
 
 
 10
 Plaintiff, the United States Equal Employment Opportunity Commission, will suffer immediate and irreversible injury to its ability to investigate and determine charges of discrimination filed against defendants by Commission Vice Chairman R. Gaull Silberman on May 26, 1989 if any of the business records enumerated in ... plaintiff's Complaint for Temporary Restraining Order and Preliminary Injunction are altered, destroyed, or removed beyond the territorial limits of the United States before a true copy thereof is made and preserved for the Commission's use. Such injury would be irreparable because, if these documents are so altered or destroyed, evidence of the discriminatory policies and practices alleged in the above-referenced discrimination charges will be irreversibly lost, and potential victims of those discriminatory policies and practices will not be subject to identification. Under such circumstances, the Commission would be unable to fulfill its Congressional mandate to enforce the provisions of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967.
 
 
 11
 The court also concluded that Interplace and Recruit would not be unduly burdened by the order, the EEOC would likely succeed on the merits, and entry of the order would serve the public interest.
 
 
 12
 In response to the companies' concerns that they be allowed to update and change records in the course of ordinary business, the order specifically permitted such alterations as long as the companies first made copies of the original documents and preserved them for the EEOC's inspection. The injunction reaches all relevant documents maintained by Recruit and Interplace since their incorporation in California (a span of four and one-half and three and one-half years, respectively). The injunction is to remain in effect until the final disposition of the EEOC's charges.
 
 
 13
 During proceedings before the district court, the companies not only argued against the issuance of a preliminary injunction, but also sought the imposition of sanctions against the EEOC, under 42 U.S.C. Secs. 2000e-5(b), 2000e-8(e), for failing to maintain the confidentiality of the discrimination charges. The district court declined to address this issue.
 
 
 14
 Following the district court's entry of the preliminary injunction, Recruit and Interplace filed timely notices of interlocutory appeal to this court.
 
 B. Statutory Framework
 
 15
 Title VII instructs the EEOC to notify an employer or an employment agency within ten days of charges filed against it under the Act. 42 U.S.C. Sec. 2000e-5(b). Section 2000e-5(b) specifically states that "[c]harges shall not be made public by the Commission."
 
 
 16
 The EEOC then investigates the charges to determine whether reasonable cause exists to believe unlawful discrimination did occur. During the investigation, EEOC officials must be provided "access to ... any evidence of any person being investigated or proceeded against that relates to unlawful employment practices ... and is relevant to the charge under investigation." 42 U.S.C. Sec. 2000e-8(a).
 
 
 17
 Section 2000e-8(e) prohibits the disclosure of information obtained pursuant to an EEOC investigation or as a result of EEOC record-keeping requirements prior to the commencement of proceedings by the EEOC.[3] The section provides:
 
 
 18
 It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.
 
 
 19
 The EEOC's own regulations reaffirm the obligation of confidentiality. See 29 C.F.R. Sec. 1601.22 ("Neither a charge, nor information obtained pursuant to section 709(a) of Title VII, nor information obtained from records required to be kept or reports required to be filed pursuant to section 709(c) and (d) of Title VII, shall be made matters of public information by the Commission prior to the institution of any proceedings under this Title involving such charge or information.").
 
 
 20
 If, after investigating, the EEOC finds reasonable cause to believe the charges are true, it undertakes to eliminate the disputed employment practice "by informal methods of conference, conciliation, and persuasion." 42 U.S.C. Sec. 2000e-5(b). This section also forbids the public disclosure or use in a subsequent proceeding of any information acquired during the informal procedures. Id. ("Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned."); see also 29 C.F.R. Sec. 1601.26(a) ("Nothing that is said or done during and as part of the informal endeavors of the Commission to eliminate unlawful employment practices by informal methods of conference, conciliation, and persuasion may be made a matter of public information by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.").[4] The statute prescribes a criminal penalty for violations of its two confidentiality provisions:
 
 
 21
 Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both.
 
 
 22
 If, during the preliminary stage of its investigation, the EEOC concludes that judicial intervention is necessary to permit it to perform its statutory duties and effectuate Title VII's goals, the EEOC may bring an action for "appropriate temporary or preliminary relief pending final disposition of such charge." 42 U.S.C. Sec. 2000e-5(f)(2). It was under this provision that the EEOC sought its temporary restraining order and preliminary injunction against Recruit and Interplace.
 
 STANDARD OF REVIEW
 
 23
 We will reverse a district court's grant of a preliminary injunction only if it abused its discretion or based its decision on an erroneous legal standard or clearly erroneous findings of fact. Religious Technology Center v. Scott, 869 F.2d 1306, 1309 (9th Cir.1989); see also Brotherhood of Locomotive Eng'rs v. Missouri-Kansas-Texas R.R., 363 U.S. 528, 535, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960).
 
 
 24
 Whether we have jurisdiction to review the district court's failure to assess sanctions is a question of law afforded de novo review. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Whether 42 U.S.C. Secs. 2000e-5(b) or 2000e-8(e) compelled the district court to award sanctions against the EEOC is also a question of law, which we review de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc ), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).[5]DISCUSSION
 
 I. Propriety of the Injunction
 
 25
 Recruit and Interplace argue that the district court abused its discretion in granting the preliminary injunction because the EEOC violated Title VII's confidentiality provisions by issuing a press release and lifting the seal on the complaint and appended charges. These actions, the companies continue, disentitled the EEOC to seek equitable relief. They rely on the "clean hands" doctrine, which insists that one who seeks equity must come to the court without blemish. See, e.g., Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 387, 64 S.Ct. 622, 624, 88 L.Ed. 814 (1944). This maxim "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with an inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). This rule applies to the government as well as to private litigants. See United States v. Desert Gold Mining Co., 448 F.2d 1230, 1231 (9th Cir.1971).[6]
 
 
 26
 The EEOC responds that its hands are untainted. It flatly denies the companies' claim that it violated Title VII's confidentiality provisions by requesting that the seal be lifted or by issuing a press release.
 
 
 27
 Preliminary injunctive relief generally is warranted if the moving party demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir.1988). "These are not separate tests, but the outer reaches 'of a single continuum.' " Los Angeles Memorial Coliseum Comm'n v. National Football League, 634 F.2d 1197, 1201 (9th Cir.1980) (quoting Benda v. Grand Lodge of Int'l Ass'n of Machinists, 584 F.2d 308, 315 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979)).
 
 
 28
 Neither party contests the propriety of the district court's use and application of these factors. Recruit and Interplace in fact concede that, looking at this test alone, the issuance of the injunction was appropriate. According to the companies, the district court nevertheless erred because it failed to apply the clean hands doctrine in addition to, or as part of, the traditional preliminary injunction analysis.
 
 
 29
 The EEOC's alleged breach of confidentiality took two forms, according to the companies. First, in appending the charges to the complaint, Recruit and Interplace argue that the EEOC violated the strict admonition of section 2000e-5(b) that "[c]harges shall not be made public by the Commission." Second, in issuing a press release and discussing the case, the companies contend that the EEOC violated section 2000e-8(e)'s requirement that the fruits of an investigation not be made public "prior to the institution of any proceeding" by the EEOC. Recruit and Interplace insist that "proceeding" refers to a formal civil action, and not to the type of preliminary, pre-conciliation, stopgap litigation authorized by Sec. 2000e-5(f)(2).[7]
 
 
 30
 We need not decide whether the EEOC violated one or both of Title VII's confidentiality provisions. Even assuming it did, we nevertheless hold that the district court did not abuse its discretion in granting the preliminary injunction. Under traditional equitable principles, the substantial public interest permeating this case warrants a departure from the "clean hands" doctrine.
 
 
 31
 First, the clean hands doctrine should not be strictly enforced when to do so would frustrate a substantial public interest. In such cases, equity's lodestar that "justice be done" prevails. The Supreme Court has instructed that the clean hands doctrine
 
 
 32
 does not mean that courts must always permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law in the transactions involved. The maxim that he who comes into equity must come with clean hands is not applied by way of punishment for an unclean litigant but "upon considerations that make for the advancement of right and justice...." It is not a rigid formula which "trammels the free and just exercise of discretion."
 
 
 33
 Yellow Cab, 321 U.S. at 387, 64 S.Ct. at 624 (quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245-46, 54 S.Ct. 146, 147-48, 78 L.Ed. 293 (1933)) (citation and footnote omitted); see also Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co., 417 U.S. 703, 717 n. 14, 94 S.Ct. 2578, 2586 n. 14, 41 L.Ed.2d 418 (1974) ("It is not the function of courts of equity to administer punishment.... If a wrong-doer deserves to be punished, it does not follow that others are to be enriched at his expense by a court of equity. A [party] must recover on the strength of his own case, not on the weakness of the [opponent's] case.").
 
 
 34
 In investigating race, sex, and age discrimination complaints, the EEOC is effectuating a compelling governmental and public interest in eradicating unlawful employment discrimination and in vindicating the rights of victims of such illegal practices. In enacting Title VII, Congress recognized that "the costs associated with racial and sexual discrimination ... are very substantial." University of Pennsylvania v. EEOC, 493 U.S. 182, ----, 110 S.Ct. 577, 584, 107 L.Ed.2d 571 (1990). The Supreme Court similarly has observed that "[f]ew would deny that ferreting out this kind of invidious discrimination is a great if not compelling governmental interest." Id.
 
 
 35
 A court's equitable powers should be used, as they were here, to effectuate the policy goals underlying legislation.
 
 
 36
 When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes.... "[T]here is inherent in the Courts of Equity a jurisdiction to ... give effect to the policy of the legislature."Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 291-92, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960) (quoting Clark v. Smith, 38 U.S. (13 Pet.) 195, 203, 10 L.Ed. 123 (1839)).
 
 
 37
 Second, equitable relief should be withheld if its exercise would be "contrary to the public interest." Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 492, 62 S.Ct. 402, 405, 86 L.Ed. 363 (1942); see also Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542, 545, 107 S.Ct. 1396, 1402, 1404, 94 L.Ed.2d 542 (1987) (acknowledging the important role of public interest considerations in the exercise of equitable discretion).
 
 
 38
 To reverse the district court's grant of an injunction because of EEOC conduct in violation of Title VII's confidentiality rules would be adverse to the public interest because it would permit the irreparable alteration and destruction of evidence pertaining to substantial race, sex, and age discrimination charges. As a consequence, a thorough investigation into the very serious charges raised by the EEOC and the companies' former employees would be impossible. All concerned parties and the public would suffer. If the charges are true, substantial abusive employment practices would be allowed to continue unchecked. Congressional purpose and the public interest would be frustrated. Innocent victims would be left without remedy. On the other hand, if the charges are untrue, the companies could lose forever the opportunity to clear their names. The district court's refusal to countenance such results under the guise of equity was not an abuse of discretion.
 
 
 39
 Equitable principles further undergird the district court's decision because the result of its balancing process promoted the interests of the allegedly victimized employees. See Golden State Bottling Co. v. NLRB, 414 U.S. 168, 181-82, 94 S.Ct. 414, 423-24, 38 L.Ed.2d 388 (1973).[8]
 
 
 40
 Denying the injunction on the basis of the EEOC's unclean hands would disserve the public interest in eliminating age, sex, and race discrimination in employment and would punish the innocent victims of discrimination for the errors of the EEOC. Against these substantial costs, Recruit and Interplace can articulate no greater end that enforcement of the clean hands doctrine would serve. Title VII already provides severe penalties for violations of its confidentiality provisions, authorizing large fines and prison terms of up to one year. 42 U.S.C. Secs. 2000e-5(b), 2000e-8(e). Frustrating an EEOC investigation would add little, if any, deterrent value to these severe sanctions.
 
 
 41
 In sum, we hold that, even assuming the EEOC proceeded to court with unclean hands, the district court did not abuse its discretion in granting the injunction. The failure to apply the clean hands doctrine under the circumstances of this case neither was wrong as a matter of law, nor did it offend traditional canons of equitable jurisprudence. Indeed, a contrary decision holding that the public interest can never override the clean hands doctrine would permit employers to continue unlawful discrimination and leave their victims uncompensated solely because of governmental misconduct unrelated to the validity or substantiality of the discrimination charges.[9] Such a ruling would "place a potent weapon in the hands of employers who have no interest in complying voluntarily with the Act, who wish instead to delay as long as possible investigations by the EEOC." EEOC v. Shell Oil Co., 466 U.S. 54, 81, 104 S.Ct. 1621, 1637, 80 L.Ed.2d 41 (1984). Equity does not command such a result.[10]
 
 II. Overbreadth
 
 42
 Recruit and Interplace argue that, even if the injunction was appropriately granted, its scope and time span are overbroad. Because both the subject matter and the time frame of the injunction encompass only evidence relevant to the precise discrimination charges levelled by the EEOC, we reject the overbreadth claim.
 
 A. The Time Frame
 
 43
 Recruit and Interplace argue that the absence of a time limit in the injunction means it reaches back to documents created since their dates of incorporation, which is four and one-half and three and one-half years, respectively. Because the discriminatory acts complained of could have occurred throughout this time period and because three to four years is not an excessively burdensome period of time, the injunction is not temporally overbroad. Three considerations support this conclusion.
 
 
 44
 First, courts may reasonably conclude that evidence from preceding years is relevant to the investigation of specific discriminatory acts and practices. Evidence of past business practices may reveal that the unlawful conduct was part of a larger pattern of discrimination. In EEOC v. Maryland Cup Corp., 785 F.2d 471, 476 (4th Cir.), cert. denied, 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986), the Fourth Circuit held that documents covering the years 1976-78 bore relevance to an employment discrimination charge filed in 1979. "[S]uch evidence is relevant and material to the question of whether the company engaged in a pattern of discrimination." Id.; accord EEOC v. Cambridge Tile Mfg. Co., 590 F.2d 205, 206 (6th Cir.1979) (per curiam) (evidence of an employer's "pattern of action" is relevant).
 
 
 45
 Second, the type of charges at issue in this case do not admit of isolated or narrow time margins. Superimposing an artificially truncated time frame would risk excluding evidence relevant to previous instances of similar discriminatory practices.
 
 
 46
 Third, the companies have not demonstrated any burden caused by the extant time frame. The injunction does not require the companies to recreate documents no longer in existence. It simply orders them to maintain all relevant records already in existence as of May 30, 1989. The injunction thus reaches only those documents that Recruit and Interplace had already, on their own, decided to preserve from their respective dates of incorporation until May 30, 1989.
 
 B. The Subject Matter
 
 47
 Recruit and Interplace also attack the injunction as overly broad in its subject matter. The injunction reaches records of job orders; the coding system (if any) used by the companies to serve clients' racial, sexual, ethnic, and age preferences; documents submitted by job applicants; copies of Recruit's employment magazine; response cards submitted by the magazine's readers; rejection letters sent to job applicants; lists of rejected applicants and those selected for interviews and/or hiring; a computerized data base of Japanese-English bilingual students in the United States; client lists; and job applicant materials for positions internal to the two companies. The companies object that these categories should have been limited to specific employers, clients, job positions, and offices. In particular, they object to the court's failure to confine the investigation to the five precise instances of discrimination identified by Mr. Schmidtberger and Ms. Stone. They also object that the injunction covers thousands of documents. We find these objections to be without merit.
 
 
 48
 The scope of relevancy, for purposes of the EEOC's investigatory powers, is quite broad. The Supreme Court has noted that "[s]ince the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." Shell Oil, 466 U.S. at 68-69, 104 S.Ct. at 1631; see also Cambridge Tile, 590 F.2d at 206 ("Notions of relevancy at the investigatory stage are very broad.").
 
 
 49
 Courts, consequently, have rejected attempts by employers to cabin EEOC investigations. In Georgia Power Co. v. EEOC, 412 F.2d 462 (5th Cir.1969), the Fifth Circuit rejected the company's attempt to confine its disclosure of employment records to those of the single employee named in the charge. In words that speak directly to Recruit's and Interplace's objections, the court held that the EEOC could obtain records pertaining to other employees and other positions:
 
 
 50
 The company contends that the only relevant data were "the records and information pertaining to Mrs. Adkins, together with such records and information pertaining to the individual who was hired in preference to Mrs. Adkins." Certainly this information is relevant, but we cannot agree that it was the only relevant evidence. Discrimination on the basis of race or sex is class discrimination. The EEOC cannot reasonably be expected to discern such discrimination by examining data relating to two individuals.
 
 
 51
 The contention that the EEOC should not have access to data concerning employment positions other than the one applied for by the charging party is without merit. Comparative evaluation of job qualifications is obviously essential to the EEOC's task. To limit the investigation to a single position would in many, if not most, instances severely restrict comparative study of the charged party's hiring practices. Thus we think it clear that information concerning other positions is relevant to the investigation.
 
 
 52
 Id. at 468 (emphasis in original).
 
 
 53
 Similarly, in Cambridge Tile, 590 F.2d at 206, the Sixth Circuit held that the EEOC could obtain information and records pertaining to more than the precise instances of misconduct charged. The court noted that " '[t]he existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of here were motivated by racial factors.' " Id. (quoting Blue Bell Boots, Inc. v. EEOC, 418 F.2d 355, 358 (6th Cir.1969)). The court concluded by "declin[ing] to hold that the EEOC is powerless to investigate a broader picture of discrimination which unfolds in the course of a reasonable investigation of a specific charge." Id.
 
 
 54
 We find the Fifth and Sixth Circuits' reasoning to be persuasive and likewise hold that the EEOC must be permitted to investigate the full picture of Recruit's and Interplace's recruitment and internal hiring practices. We therefore decline the companies' invitation to straitjacket the EEOC into an artificially narrow survey of Recruit's and Interplace's employment records. " 'Clearly, an alleged perpetrator of discrimination cannot be allowed to pick and choose the evidence which may be necessary for an agency investigation.' " University of Pennsylvania, 493 U.S. at ----, 110 S.Ct. at 584 (quoting EEOC v. Franklin and Marshall College, 775 F.2d 110, 116 (3d Cir.1985), cert. denied, 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986)).
 
 III. Sanctions
 
 55
 Recruit and Interplace argue, lastly, that the district court erroneously failed to assess sanctions against the EEOC for violating Title VII's confidentiality provisions. The companies emphasize the mandatory nature of these penalties, Congress having instructed that offenders "shall be" punished. 42 U.S.C. Sec. 2000e-8(e).
 
 
 56
 The district court has yet to rule on the sanctions motion. Absent a judgment or order to review, neither 28 U.S.C. Sec. 1291 nor 28 U.S.C. Sec. 1292 gives us jurisdiction to decide this issue.
 
 
 57
 Recruit and Interplace argue that an interlocutory appeal "brings the entire case before the court." Aerojet-General Corp. v. American Arbitration Ass'n, 478 F.2d 248, 252 (9th Cir.1973). The Aerojet court, however, went on to note that this power "is used to review other nonappealable orders of the district court." Id. at 253 (emphasis added). As previously noted, we have no order to review.
 
 
 58
 Moreover, in defining the scope of our jurisdiction on interlocutory appeal, we have held that appellate jurisdiction under Sec. 1292(a) extends only to those matters " 'inextricably bound up with the ... [injunction] and the court ... may consider the merits of the case.' " Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc., 682 F.2d 802, 805 (9th Cir.1982) (quoting C. Wright, Federal Courts 513 (3d ed. 1976)). The sanctions issue is not "inextricably bound up with the" question of the injunction's propriety. Nor does it constitute the merits of this case. We thus lack jurisdiction under Sec. 1292(a) to review the district court's failure to assess sanctions.
 
 
 59
 What the companies effectively seek is a writ of mandamus directing the district court to perform its allegedly mandatory duty to assess sanctions.[11] A number of barriers exist, however, to the invocation of such an "extraordinary remedy" in this instance. Valley Broadcasting Co. v. United States Dist. Court, 798 F.2d 1289, 1291 (9th Cir.1986) (quoting Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)).
 
 
 60
 First and foremost, the district court did not have any enforceable duty to assess sanctions. The penalty provisions to which the companies refer prescribe criminal offenses, not civil sanctions. See University of Pennsylvania, 493 U.S. at ----, 110 S.Ct. at 584 ("A violation of this provision [42 U.S.C. Sec. 2000e-8(e) ] subjects the employee to criminal penalties."); EEOC v. Associated Dry Goods Corp., 449 U.S. 590, 596, 101 S.Ct. 817, 821, 66 L.Ed.2d 762 (1981) ("[A]ny Commission employee violating this prohibition [42 U.S.C. Sec. 2000e-5(b) ] faces criminal penalties."). Nothing in the language of Title VII authorizes individuals or companies to act as private prosecutors and enforce these provisions.[12] Nor does the statute vest judges with the power unilaterally to declare persons guilty of a criminal offense and sentence them to prison or levy a fine. Enforcement of these provisions may only be accomplished through the traditional route of criminal prosecution, in which those charged will be afforded the full panoply of rights and procedures guaranteed criminal defendants by the Constitution. In light of the nature of these provisions, the district court's failure to assess these sanctions is not the appropriate object of a writ of mandamus.
 
 
 61
 Second, even assuming the district court could singlehandedly fine or imprison EEOC employees, the companies have not satisfied the remaining criteria for the award of a writ of mandamus. See Valley Broadcasting, 798 F.2d at 1291. The relief they seek will still be available on direct appeal. Recruit and Interplace also have not demonstrated that immediate punishment is necessary to avoid having irreparable harm befall them. In short, the companies have not shown that exceptional circumstances warrant the extraordinary relief they seek.
 
 CONCLUSION
 
 62
 We affirm the district court's grant of a preliminary injunction. The substantial public interest in investigating discrimination claims like these warrants a departure from the clean hands doctrine in this case. The injunction is not overbroad. The material it covers falls within the traditional scope of relevancy for EEOC investigations. Finally, we will not order the district court to assess sanctions.
 
 
 63
 AFFIRMED.
 
 
 
 [1]
 According to information provided to the EEOC by Ms. Lisa Sugimura, a former translator for Interplace, the following represents the coding system used at Interplace:
 JOB ORDER DESCRIPTIONS
 SUITE 20 THROUGH 35 or SUITE 20-35: ages 20 to 35
 FLOOR 40: person in his/her 40's (age)
 TALK TO MARIA or SEE MARIA or MEET WITH MARIA: prefer/will accept Hispanics
 TALK TO MARY or SEE MARY or MEET WITH MARY: prefer/will accept Caucasians
 TALK TO MARIKO or SEE MARIKO or MEET WITH MARIKO: prefer/will accept Japanese
 TALK TO ADAM or SEE ADAM or MEET WITH ADAM: prefer/must be Male
 TALK TO EVE or SEE EVE or MEET WITH EVE: prefer/must be Female
 TALK TO MARYANNE or SEE MARYANNE or MEET WITH MARYANNE: prefer/will accept Blacks
 For example, if a client is looking for a person who is preferably 1) Caucasian or Japanese and 2) male, but will also accept someone who is Hispanic, then the job order would read (after inputting the other requirements):
 1) Talk to Mary or Mariko
 2) See Adam
 3) Also meet with Maria
 It may be better to number them in order of importance or preference. Please note that these phrases are only to be used when a job order calls for a strict restriction on certain age, sex, or race. If a client, for example, says that he definitely DOES NOT want to hire nor interview a Japanese person, then "DO NOT TALK TO MARIKO" would be included in the job order.
 Additionally, if a client ONLY wants a Caucasian person between the ages of 30 and 40, the description would read, "TALK TO MARY; SUITE 30-40."
 
 
 [2]
 Ms. Stone stated that she was told to recruit a new receptionist for Interplace's San Francisco office. Her supervisor strictly counseled against hiring an African American for the position because she was "afraid of them" and thought "they were scarey [sic]." Ms. Stone said the supervisor further commented that Interplace could not hire a black person because, if one of the company's Japanese clients came into the office and "saw a black face," Interplace would lose their patronage. Ms. Stone subsequently recommended two African Americans and a Hispanic for the position. Her recommendations were ignored, and an Asian woman was hired
 
 
 [3]
 Section 2000e-8(c) requires employers and employment agencies to:
 (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder.
 
 
 [4]
 If informal conciliation fails, the EEOC may initiate an action in federal district court seeking appropriate relief against the employer. 42 U.S.C. Sec. 2000e-5(f)(1)
 
 
 [5]
 On July 1, 1991, EEOC filed a motion requesting dismissal of this appeal because a consent decree had been entered resolving the claims asserted in EEOC's complaint. Upon entry of the decree, the preliminary injunction expired by its own terms. We hold that the case is not moot for three reasons
 First, the question of what role violations by the EEOC of Title VII's confidentiality provisions should play in preliminary injunction analysis is a question capable of repetition, yet evading review. See Oregon Envtl. Council v. Kunzman, 817 F.2d 484, 492 (9th Cir.1987); California Energy Resources Conservation and Dev. Council v. Bonneville Power Admin., 754 F.2d 1470, 1473 (9th Cir.), cert. denied, 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 457 (1985) ("[T]he repetition/evasion exception does not require a repetition of the exact law or behavior. The focus is on whether the same issues, arising from a repetition of a similar law or action, are likely to recur.") (quotation omitted). Nothing indicates that the public disclosure of charges that occurred in this case was an isolated or anomalous incident. Indeed, EEOC argues that it is entitled to make such disclosures. A repeat of the issue is thus quite likely to recur. Cf. United States v. Sells Engineering, Inc., 463 U.S. 418, 422 n. 6, 103 S.Ct. 3133, 3137 n. 6, 77 L.Ed.2d 743 (1983) ("We cannot restore the secrecy that has already been lost but we can grant partial relief by preventing further disclosure.") (quotation and citation omitted). Given the potentially brief life span of a preliminary injunction, review of the impact such disclosures should have on a district court's preliminary injunction calculus will continue to evade review if an unreasonably strict mootness standard is enforced.
 Second, the district court's injunction decision has a continuing impact on the parties and their relationship. See Northwest Envtl. Defense Center v. Gordon, 849 F.2d 1241, 1245 (9th Cir.1988) (where action at center of appeal has continuing effects on parties that judicial decision could remedy, case is not mooted by termination of disputed activity). The issues raised by Recruit and Interplace in this appeal encompass much more than the narrow question of the propriety of the injunction. They also seek dismissal of the charges against them, dismissal of the actions filed by the EEOC, and sanctions for the EEOC's alleged violations of Title VII's confidentiality provisions. Resolution of these issues could affect the future of the consent decree. Interplace, moreover, has appealed a fine imposed against it for violating the preliminary injunction. Obviously, were we to conclude that the injunction were invalid, the fine would have to be vacated. Cf. Shuffler v. Heritage Bank, 720 F.2d 1141, 1145 (9th Cir.1983).
 Third, the consent decree has no impact on the second half of the companies' appeal, which concerns the district court's failure to award sanctions against the EEOC for its alleged violations of Title VII's confidentiality provisions. A case is not moot if a court may still award monetary relief to a party. See In re Carroll, 903 F.2d 1266, 1270 (9th Cir.1990).
 
 
 [6]
 At times in their brief, Recruit and Interplace also accuse the EEOC of violating the court's order to seal. The companies, however, do not appear to have raised this issue before the district court and the court made no ruling on the matter. The question of the EEOC's compliance with the seal order, therefore, is not before us. See Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985)
 
 
 [7]
 Because conciliation efforts had not yet commenced, the companies do not argue that the EEOC violated Sec. 2000e-5(b)'s prohibition against the disclosure of information gleaned during informal settlement efforts
 
 
 [8]
 Denial of the injunction would have been inequitable for an additional reason. The EEOC charges violations of not just Title VII, but also of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 623. This statute does not contain confidentiality requirements like those in Title VII. Denial of the injunction thus would have precluded the EEOC from investigating age discrimination charges against Recruit and Interplace even though the EEOC did nothing to contravene that Act's policies or provisions
 
 
 [9]
 We do not decide whether enforcement of the clean hands doctrine against the EEOC would be appropriate in a case where the EEOC's misconduct actually affected its or the court's ability to verify the truth or falsity of discrimination allegations. See Great Western Cities, Inc. v. Binstein, 476 F.Supp. 827, 832 (N.D.Ill.1979), aff'd, 614 F.2d 775 (7th Cir.1979) (clean hands doctrine applies only if misconduct is "in connection with the transaction under consideration")
 
 
 [10]
 Recruit and Interplace argue on appeal not only that the injunction should be reversed, but also that we should order the charges against it dismissed and/or the evidence collected against it suppressed. We decline to do so. First, these arguments were never presented to the district court. We will not review on appeal arguments not raised and ruled upon by the district court. Bolker, 760 F.2d at 1042. Second, and more fundamentally, there is no judgment or order to be reviewed on these issues. Cf. 28 U.S.C. Secs. 1291, 1292(a) (court of appeals jurisdiction exists only over final judgments or appealable interlocutory orders issued by district courts). Also, because no employment discrimination lawsuit has yet been filed in the district court, a request for dismissal of a case yet to be filed and suppression of evidence in some hypothetical future case is premature and not ripe for determination. The whole case could terminate during the EEOC's administrative phase. See Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) ("[T]he ripeness doctrine['s] ... basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."). With respect to the suppression of evidence claim, moreover, Recruit and Interplace cite no authority or policy reason supporting expansion of the exclusionary rule to encompass civil cases where governmental misconduct did not occur in the course of collecting the evidence
 
 
 [11]
 We may construe an invalid appeal as a writ of mandamus. See Land v. Deeds, 878 F.2d 318, 318 (9th Cir.1989); Unified Sewerage Agency v. Jelco, Inc., 646 F.2d 1339, 1343 (9th Cir.1981)
 
 
 [12]
 We do not decide whether an implied civil right of action exists under either section 2000e-5(b) or section 2000e-8(e), because the companies did not raise this argument either before us or in the district court. For present purposes, it is sufficient that the statutes do not explicitly provide for civil enforcement